## HATHORN and others *vs.* THE GERMANIA INSURANCE COMPANY.

Under a condition in a policy of insurance, reserving to the insurers the right to terminate the insurance, at any time, on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term, the return of the premium is the essential part of the condition to be performed, and a prerequisite to the right to terminate the risk.

Notice, without a return, or offer to return, the premium, amounts to nothing,

Whatever negotiations may take place, until a return or tender of the premium is made, the policy still remains in force.

A promise by the insured to bring the policy to the office of the agent, to be canceled, when he is to receive the return premium, neither amounts to a valid agreement that the policy shall be held and deemed canceled, without a return of the premium, nor to a waiver of performance of the condition on which the right to terminate the risk depends.

Where the agent of the insurers informed the insured that he had been instructed to cancel the policy, under a condition therein reserving the right to do so, telling him that he would give him (the insured) a check for the return premium and cancel the policy the next day, at 12 o'clock, to which the assured assented; but the premium was not paid the next day, nor tendered, nor was any attempt made to cancel the policy, the company retaining the premium, and the insured the policy, until a loss occurred; *Held* that the policy was still in force.

THIS action was brought on a policy of insurance for $5000, issued by the defendants to the plaintiffs, by which the latter were insured on their property, against all loss and damage thereto, by fire, during the period of one year, commencing January 26, 1866. The buildings covered by the policy were wholly destroyed by fire on the 28th of May, of that year. The policy was subject to the following condition, to wit: "The insurance may also be at any time terminated, at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy."

It was insisted, as matter of defense, that the company elected to terminate, and did terminate, the insurance, under the authority of this provision, on the 21st of March preceding the loss.

Hathorn *v.* Germania Insurance Company.

The action was tried before Justice POTTER, without a jury, and judgment was directed for the plaintiff.

The following opinion was delivered at the special term:

POTTER, J. This action is brought to recover the amount of $5000 and interest, claimed to have been insured by the defendants upon the late Congress Hall building at Saratoga Springs, which was consumed by fire on the 28th day of May, 1866. The policy bore date 3d January, 1865, and was for one year, and it seems was renewed for another year on the 3d January, 1866, by a renewal receipt, in pursuance of a clause in the policy to that effect. The policy and renewal receipt were duly authenticated by the officers of the defendants' company, and contained a clause "that it was not valid unless countersigned by R. McMichael, agent, at Saratoga, N. Y." It was so countersigned. No question arose upon the trial about the making of the contract for insurance, the payment of the premium, the value of the property insured, the agency of McMichael for the defendants, or any misrepresentation or fraud, or breach of condition as to the property insured.

Among the clauses in the policy was the following: "This policy is made and accepted in reference to the terms and conditions herein contained and hereto annexed, which are hereby declared to be a part of this contract;" and one of the annexed conditions was in the following words: "*The insurance may also be at any time terminated at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy.*" On the 13th March, 1866, the president of the defendants, by letter, directed their agent, R. McMichael, to cancel the plaintiffs' policy. This direction was communicated to Mr. Hathorn, one of the plaintiffs. Mr. Hathorn desired the agent to request of the defendants that the policy might be left in force until the

1st April then next. The agent complied with this request. The president of the defendants, in answer, denied this request, but consented to its continuation until the 21st March then instant, at noon. This denial and consent was also communicated by the agent to Mr. Hathorn on or before the 20th of March then instant, perhaps the 18th or 19th, to which Mr. Hathorn replied, " very well." And then, by an understanding then had between McMichael, the agent, and Hathorn, the latter was to call at the office of McMichael the next day with the policy, to receive the check of the agent, McMichael, for the return premium and to have the policy canceled. Hathorn called as agreed, at the time appointed, and the agent not being in, he left, and the parties did not meet again on that day. Thus far the facts are without any material conflict, and will be found as above stated. Subsequent to this date the conversations between the agent of the defendants and Hathorn (if any were had) are conflicting. The agent declaring that Hathorn agreed to call on him and take his check for the premium to be refunded; the latter denying any agreement of the kind, or indeed any conversation, to his recollection.

On the night of the 28th of May, 1866, the Congress Hall property was consumed by fire, without the fault of the plaintiffs. No question is raised as to the value of the property : the loss was total. The preliminary proofs were duly served, though the service was repudiated by the defendants. There was no acceptance of them by the defendants. The action was commenced by the plaintiffs within the required time. The defense resting substantially upon the cancellation of the policy before the time of the fire, and a waiver, by the plaintiffs of the actual performance by the repayment of the premium.

The question to be decided is, of course, within a very narrow compass. It is claimed by the defendants that an agreement to determine an insurance, as well as an agree-

Hathorn *v.* Germania Insurance Company.

ment to insure, may be made by parol; and that the waiver of prepayment of the premium to be refunded, like the waiver of prepayment of the premium in the contract of insurance, may also be by parol. The plaintiffs' contract of insurance was by the written and printed policy issued by the defendants, which provided in itself one, and but one, method by which it could terminate its liabilities, and have its policy canceled and the contract terminated. The contract, as expressed in the policy, of course remained in force until that terminating act was performed according to the terms reserved in the policy so made and issued by the defendants. The burden of proving the performance of this terminating act, was upon the defendants. The *option* of the defendants so to terminate the insurance was duly made known. Of this there is no question. Of the time when the defendants intended it should take effect, the plaintiffs were fully informed. Of *this* there is no dispute. The *place* where the act was to be performed, it is *certain*, was agreed upon between the parties. Hathorn attended at the time and place, according to such agreement, and the defendants' agent was not present; this may be stated as proved. A subsequent agreement by Hathorn to call again at the office of the agent, and bring the policy to be canceled and take the check of the agent for the unexpired premium, though stated by the agent, is expressly denied by Hathorn. In this there is a conflict of evidence.

Unless this fact is maintained by the superior weight of evidence, the question of waiver of payment at the *time*, *as a question of fact*, does not arise. Upon this issue of *fact* the case stands with one witness for the defendants and one witness for the plaintiffs. Assuming this fact to be material, and the witnesses to be equally credible, the defendants have not the necessary preponderance of testimony to sustain this burden. As to the facts from which this *contract to cancel*, and this *waiver* by plaintiffs of pay-

ment at the *time*, is to be made out, the witnesses on both sides concur in this—that after the receipt of the defendant's letter of the 17th of March, 1866, there was to be a future meeting between the defendants' agent and Hathorn; and that at such meeting something further was to be done, to wit, the receiving of the money or check, for the return or unexpired premium, and cancellation of the policy. Such a meeting was never had. I do not mean that the cancellation of the policy was to be a distinct act; the receipt of the returned or unearned premium would doubtless effect a cancellation. Suppose the fact be assumed that Hathorn consented or agreed to meet the agent at his office on the 21st of March, at noon, and take the agent's check for the unexpired premium; and also that he (Hathorn) never gave notice of any intent to revoke that consent or willingness to receive the return premium, but on the contrary continued to intimate or express his assent to do so; would this amount to a legal waiver on his part of the full and actual performance of the condition upon which the cancellation was to take effect? It is undisputed that the defendants never did refund the unearned premium, nor tender it to the plaintiffs. It is undisputed that the defendants kept the premium, and the plaintiffs the policy, and that as a matter of *fact* the cancellation was not accomplished. The way provided by the defendants for terminating the policy at their option was by an act to be performed by themselves. They had not performed that act. In the absence of an express agreement by the plaintiffs to waive the performance of the condition mentioned in the condition of the policy, are the undisputed facts stated sufficient to establish a waiver by implication? If not, then the contract in the meantime continued in force. The *intention* to perform an act, is not equivalent to actual performance. The consent of the plaintiffs that the act of cancellation might be done, was not a new agreement; or, if it was, it had no new consid-

Hathorn *v.* Germania Insurance Company.

eration to support it. That consent or agreement was given when the contract by the policy was originally made. It was a part of the original contract for insurance, for which a consideration was paid, and received, and not a new agreement. The old agreement remained in force; it was not abandoned for the new one. There were not then two agreements in force; the old one by the policy, the new one by parol. It is a better construction to hold, that the assent of the plaintiffs to the cancellation was rather a consenting or submitting to what they had no power to resist or refuse, when the defendants chose to enforce the condition by refunding the unearned premium, and terminating their liability. There was no benefit to result to the plaintiffs by the act to be performed; on the contrary they regarded it as a favor, if not a benefit, to leave the contract undetermined. They desired its continuance. They applied to the defendants to have it remain undetermined. This favor was denied by the defendants, except for a few days. The defendants insisted upon making their option to cancel the policy according to its letter, by doing the particular act in the particular way provided in the policy. They had the legal and technical right so to do. The plaintiffs possessed no power to prevent it. When Hathorn was informed by the defendants' agent that this option to cancel would be enforced, Hathorn replied, "very well—all right." Is this remark to be held to be an agreement—a *new* agreement on his part—or as an expression of acquiesence in the terms of the original agreement, and in the performance of an act that he could not approve? It was "all right" in law, and by the terms of his policy did he by this remark intend to waive the performance by the defendant, of the act to be done that would put an end to the contract. He doubtless intended to consent to accept the check of the agent in lieu of money, and may well be regarded as having waived the payment of money by consenting to take a

check. But did he waive or intend to waive payment in some form. He was not bound, it was not his duty, to call upon the agent, though by mutual agreement and by proper courtesy between neighbors, he did call upon the agent. We have already said the burden of proof of performance of this condition was upon the defendants. Though the defendants intended to put an end to the agreement, and gave notice of this intent, yet this alone was not sufficient; nor is it sufficient that the plaintiffs consented it might be done, if that consent was but the yielding to an act he knew he, could not approve. I cannot see in this a new agreement, or an intent to waive the conditions of the old one. I think, therefore, that there was no legal performance of this condition by the defendants, nor any legal waiver, or waiver in fact of its performance by the plaintiffs. He may have been willing to delay, but at whose risk was the delay? The contract was never *actually* terminated by the option of the defendants, being carried out by the act required in terms in the condition of the policy. This delay could not be at the option of the plaintiffs; it was at the risk of the defendants. If I am right in this, the plaintiffs are entitled to recover the amount insured by the defendants. (*See Franklin Fire Ins. Co.* v. *Massey,* 33 *Penn. R.* 221, 232; *Goit* v. *National Prot. Ins. Co.,* 25 *Barb.* 193; *Head* v. *Providence Ins. Co.,* 2 *Cranch,* 127.)

From the judgment entered in pursuance of the above opinion, the defendants appealed to the general term.

*W. A. Beach,* for the appellant. Upon the principal question involved, the case is presented in two aspects: *First.* Upon the condition authorizing the company, arbitrarily, to terminate the risk, on refunding the proper proportion of the prepaid premium; *Second.* Upon the undenied parol agreement between the parties, that the risk should end on the 21st of March, 1866.

Hathorn *v.* Germania Insurance Company,

I. The defendant regularly exerted its power to end the risk. 1. It must be assumed that each party knew the terms and legal effect of the condition conferring the power. 2. The letter of March 13th was an unequivocal exertion of it. That letter was exhibited to the plaintiff, who acquiesced in its demand, but proposed an extension, for his own convenience. 3. At the termination of the extended time, it was agreed that the policy should terminate, and the plaintiff was to call upon the agent and receive his premium. 4. This accomplished the cancellation. It was not indispensably necessary that the unearned premium should be *actually returned*. It was perfectly competent for the plaintiff to *waive* payment. This doctrine of waiver has been very extensively and righteously applied to this class of cases. Prepayment of premium is commonly required, by express condition, and yet it is held that an agent may waive it, and extend credit. And so in a great variety of examples; all of which are precisely parallel to this, in principle. The defendant had the right to cancel this policy, on refunding the premium. It exerted the right without the payment, but the plaintiff agreed that it might so be done. He did not insist upon the immediate return of the premium; at the same time assenting that the policy should be deemed canceled. No formality was necessary to accomplish that. No written cancellation was requisite. By the condition, *notice* was all that was required, accompanied by return of the premium. Certainly it was in the power of the plaintiff to accept the notice as effectual, and waive, or postpone, the immediate repayment of the premium. This was unquestionably done, assuming the plaintiff's relation of the transaction to be correct. True, (as the plaintiff says,) the agent said to him, "I'll give you a check, and cancel it to-morrow, at 12 o'clock." But the agent had previously given the required notice, to which the plaintiff had answered, "very well—all right." It cannot be

denied that there was an acceptance of the notice, and acquiescence in its effect, without insisting upon the condition of payment. Nor can it be denied that both parties considered the policy canceled. The plaintiff knew the positive instructions given by the defendant to its agent. He accepted them as decisive—acquiesced in the result— and then arranges with the agent for a return of the premium at a future day. Is there any doubt that upon these facts the plaintiff could have maintained an action for the unreturned premium? And if so, the policy was at an end. (*Sheldon* v. *Atlantic Fire and M. Ins. Co.*, 26 *N. Y. Rep.* 460.) The supplemental finding, as matter of fact, that there was no waiver, is ineffectual to change the aspect of the case. The facts still remain the same, and this conclusion of the court is but an erroneous inference from them.

II. The other aspect of the case is, however, decisive. The defendant, being entitled to cancel the policy, proceeds to exercise the right. The plaintiff, acceding to the right, interrupts its exercise, by proposing to the defendant, for his own advantage, a continuation of the policy to a named day; and the parties agree that it shall be deemed to continue to that period, and no longer. This is a perfect, legal contract, founded upon abundant consideration, and obligatory upon both parties. 1. It is no objection that it was verbal. Insurance may be by parol; and so may the renewal of a policy, which is a mere extension. And whenever a contract may be made by parol, it may be rescinded or modified in like manner. (*Trustees &c.* v. *Brooklyn Fire Ins. Co.*, 19 *N. Y. Rep.* 305; *S. C.* 28 *id.* 153. *Clark* v. *Dales*, 20 *Barb.* 42, 64. *Kelly* v. *Commonwealth Ins. Co.*, 10 *Bosw.* 82.) 2. There was ample consideration for the contract. (*a.*) In the agreement of the defendant to waive its right of immediate cancellation, which it had commenced to assert. (*b.*) In the new agreement to continue the risk, for a definite period. It was the case of

parties to a contract, under changed circumstances, enter-
ing into new stipulations concerning the same subject
matter.    The last supersedes the first, and finds, in itself,
abundant support.    It was perfectly competent for the
parties to change the limit of this insurance.    Mutual
concurrence in the change was all that was necessary.
And in that mutuality, ample consideration was furnished.
(*c.*) In the undertaking, through its agent, on the part of
the defendant, to return the unearned premium.    Suppose
this example: A. sells B. a horse, for $50, reserving the
right to reclaim the animal on repaying an agreed propor-
tion of the price.    Afterwards A. notifies B. that he elects
to exercise that right; and B. proposes an alternative
which A. accepts, and so the parties agree.    Can the obli-
gation of that contract be questioned?    Can it be denied
that the first is modified, or rescinded, according to the
terms of the latter?    Especially would there be any doubt
if, in the example supposed, it was made a part of the last
arrangement that the purchase price of the horse should
be divided between the parties, in a fixed proportion?    The
finding of the court that there was no waiver in fact does
not affect this point, which rests upon the idea of *contract*,
not *waiver*.

III.  These views are not shaken by the idea that there
was a special time appointed, when the premium was to
be adjusted, and the policy canceled.    1. Such is not the
fact, under the evidence.    Only two witnesses speak upon
the subject; while agreeing that the policy was to termin-
ate March 21st, they disagree as to the time when pay-
ment of the return premium was to be made.    2. But if
that was to have been done at 12 o'clock, on the 21st of
March, as Mr. Hathorn insists, it would not affect the con-
clusion.    That was not made a condition influencing the
continuance of the risk.    Its termination at the period
designated was definitely fixed, by the concurrent assent
of the parties.    That time was given, to calculate, and to

pay the unearned premium, did not suspend the operation of the agreement, concluded as to all its terms, and mutually understood to be effective.   Assume that Mr. Hathorn called at the agent's hotel, as he says was agreed, to receive his premium, and that the agent broke his appointment; still Mr. Hathorn did not, ever, demand the premium. Although the agent was absent, his clerk, who acted for him in his insurance business, was there.  And the calculation of the amount of premium to be returned had been made.   The conduct of Mr. Hathorn operated as a waiver and extension of the time of payment.   3. The question of payment is, however, entirely distinct from the life of the policy.   It was agreed that it should end on the 21st. Payment was to be made after the agreement.   Mr. Hathorn waived strict performance of the condition, according to his own narration, and, according to the agent's, ten days afterwards he recognized the efficacy of the contract. 4. One circumstance is significant, in the consideration of the proofs.   Mr. Hathorn more than intimates that on the 19th or 20th of March, when the final instructions from the defendant were exhibited to him, the return of the premium was delayed because it was not calculated, and the agent's book was mislaid; while it is unquestionable that the amount had been computed, at the interview on the 19th or 20th of March.   Nothing, therefore, remained but the production of the policy; and that was unnecessary.   It would seem impossible to resist the conviction that it was fully understood by the parties that the risk ended on the 21st of March, and that the return of the unearned premium was postponed because the parties supposed a redelivery of the policy necessary, and deferred the return of the premium until Mr. Hathorn should produce it.   Consider Mr. Hathorn's relation of the transaction : "Mr. McMichael came to him, saying the defendant had instructed him to cancel this policy.   I asked him *to let it run until the first of April.*   He said, I will write

and see. He did so, and presented me the reply of the
company, as I admit, saying it would give me until the
21st at noon, and no longer, and I agreed to that, saying,
very well—all right." Is not this a complete agreement?
And what matters it that Mr. Hathorn adds that Mr. Mc-
Michael "figured a little, and could not find his book, and
proposed a meeting for the next day?" Mr. Hathorn is
mistaken in the language he attributes to the agent. The
latter could not have said that his instructions were "to
cancel that to-morrow, at 12 o'clock." Mr. McMichael
swears that he read the letter of March 17, to Hathorn,
and the latter does not deny it. The letter was an answer
to his request to continue the policy, and consented to a
limited continuance. The direction to cancel, and the notice
of cancellation, had been given before. All the after nego-
tiation was directed towards an extension of the risk, for
Hathorn's accommodation. And it resulted in a specific
agreement that it should extend to, and terminate on, the
21st of March, at noon. Hathorn accepted that modifica-
tion of the policy. It was an agreement, wholly irrespect-
ive of the condition for cancellation, and of the return of
the premium. The defendant agreed to waive the pro-
ceedings to cancel, and to extend to March 21st, and the
plaintiff agreed that the policy should be so modified and
restricted. If the contract can be set aside, and flagrant
injustice practised, against the clear intent of the parties,
it must be by a strange and unjustifiable perversion of the
evidence. Whatever difficulty may be supposed to exist
is wholly produced by confounding the proceeding to
cancel the policy with the independent agreement for its
modification. That rests exclusively upon the letter of
March 15, written with the assent of the plaintiff and by
reason of his solicitation, and the reply of March 17, read
and submitted to the plaintiff, and assented to by him.
The letters, with the parol assent of the plaintiff, consti-
tute the contract, and are the best evidence of it.

*C. S. Lester*, for, the respondents. The only question arising in this case is : Had the contract of insurance been terminated before the fire ? This is a question of fact, and the finding of the court below is conclusive upon this question. If, however, it is claimed to be a question of law, arising upon an undisputed state of facts, then the facts as stated in the case most favorably for the plaintiffs are, after a general report in their favor, to be taken for the purpose of determining the law. These facts are as follows : The defendants issued a policy of insurance to the plaintiffs, containing the following condition : "The insurance may also be terminated at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy." It will be observed that by the terms of this condition two things are requisite to terminate the insurance. First. *Notice* of the option of the company. Second. *Refunding* a ratable proportion of the premium. The evidence tends to show that the company instructed their agent to terminate the policy on the 21st day of March, 1866. What the agent did towards carrying into effect these instructions is testified to by Mr. Hathorn, as follows : "As I went into the door, walking along up to the stove, he says, 'See here, Hathorn.' I walked up to the desk; he pulled out a letter and said, 'I have got a letter from the Germania Fire Insurance Company, and they direct me to cancel that to-morrow, at twelve o'clock.' I said, 'very well—all right;' he then went and figured a little at the desk, and said, 'I will give you a check, and cancel it to-morrow at twelve o'clock;' said I, 'very well— all right."

Q. The figuring, what did you understand that to be ?

A. The figuring I supposed was the amount of premium to be returned, but he did not find the date of the policy that he issued ; he did not say that.

Q. By plaintiffs' counsel. That is your supposition?
A. Yes, sir.

Hathorn also testifies that he took the policy and went to the agent's office the next day to carry out the arrangement, but the agent was not there, and nothing further was done in regard to the matter. Now, admitting that this was notice of the option of the company to terminate the policy, it must also be admitted that here there was no refunding of a ratable proportion of the premium.

The defendants admit that the premium was not refunded, as required by the condition of the policy, but claim that payment was waived by the plaintiffs.

I. The question of waiver is a question of fact, and is found against the defendants.

II. The evidence does not authorize the conclusion that the plaintiffs waived, or intended to waive, the repayment of the premium. The most that can be said is that they consented to take the check of McMichael as money.

There was no surrender of the policy at that time. Hathorn did not say, in words or substance, "I agree now that the policy shall be considered canceled." He simply says to McMichael's proposition that they *would* cancel the policy the next day by refunding the premium, "very well—all right." Clearly this is no waiver. (*Wood* v. *Poughkeepsie Mut. Ins. Co.*, 32 *N. Y. Rep.* 619. By the very terms of the arrangement, something further was to be done to consummate it. (*a*.) The amount of return premium was to be ascertained. (*b*.) The check of McMichael was to be given to the plaintiffs for that amount, when ascertained. (*c*.) The policy was to be surrendered and canceled. Until these essential prerequisites were performed, the policy remained in force. If the defendants desired to avail themselves of the right reserved to terminate the contract, then it was the duty of the defendants to see that everything necessary was done to complete it. The delay was wholly at the risk of the defendants. The

plaintiffs had signified their desire to have the policy con-
tinue, and there was no duty imposed on the plaintiffs in
this respect. The whole interview is simply the declara-
tion on the part of the defendants of an intention to avail
themselves, the next day, of the right reserved to cancel
the contract. The plaintiff says, "very well—all right,"
which was simply an assent to the defendants' doing an
act which the plaintiffs had neither the power nor the right
to prevent, although they desired to do so. The defend-
ants never carried their expressed intention into effect, and
the policy remained in force.

III. The burden of proof is on the defendants, and they
have failed to show that the contract of insurance was in
anywise canceled or rescinded, or any right waived by the
plaintiffs.

*By the Court*, BOCKES, J. It is unquestioned that the
policy of insurance was in force prior to and until the
21st March, 1866, but it is insisted that the insurance was
terminated by the defendants on that day, pursuant to the
right to do so reserved by the condition annexed to the
policy, and above set out. There had been conversations
between the agent of the defendants and Mr. Hathorn,
one of the plaintiffs, prior to the 20th March, in regard
to the cancellation of the policy, in which Mr. Hathorn
had been informed that it was the intention of the com-
pany to terminate the insurance. On that day the agent,
having received directions from the company to act un-
der the condition and cancel the policy, informed Mr.
Hathorn of his instructions, and said to the latter, as
stated in the finding of the judge on the trial, that he
would give him a check for the return premium, and can-
cel the policy the next day at 12 o'clock. Mr. Hathorn
replied, "very well—all right." The premium was not
returned the next day, (21st,) nor tendered, nor was any
attempt made to cancel the policy; but the company

retained the premium, and the plaintiffs the policy, until the loss occurred.

Concede the above to be the entire transaction between the parties in regard to the cancellation of the policy, and the defendants' claim that they terminated the risk, pursuant to the condition, is very manifestly without foundation. According to the condition, it was at the option of the company to terminate the insurance, on giving notice to that effect, and *refunding a ratable proportion of the premium for the unexpired term.* The return of the unearned premium was the essential part of the condition to be performed. This was a prerequisite to the right to terminate the risk. Notice, without return or an offer to return the premium, would amount to nothing. The policy would remain in force until a return or tender of the premium was made.

It is urged that Mr. Hathorn promised the agent to bring the policy to the office, to be canceled, when he was to receive the return premium, and the agent so testified, in substance. Were this undisputed, it neither amounted to a valid agreement that the policy should be held and deemed canceled, without a return of the premium, nor a waiver of performance of the condition on which the right to terminate the risk depended. But in answer to this statement of the agent, Mr. Hathorn testified that on the evening of the 20th March the agent informed him that he had received a letter from the company, directing him to cancel the policy the next day. Hathorn replied, "very well—all right." The agent then said, "I will give you a check, and cancel it to-morrow at 12 o'clock." Hathorn again replied, "very well—all right." That the next day, at 12 o'clock, he went to the office with the policy; that the agent was absent; and from that time to the time of the loss, the policy remained in his pocket; during all which time he was ready to receive the unexpired premium, which, however, was never offered him; that in no

other way than as he had stated, did the agent ever request him, or did he promise, to return the policy and close up the matter. Now, according to this evidence, there was no agreement made to terminate the risk. Indeed, none was necessary; nor did the parties suppose it necessary to make a new contract in that regard, inasmuch as the right to terminate the insurance was already secured to the company, on compliance with the condition accompanying the policy itself.

Nor was there any waiver by Mr. Hathorn of the condition. When informed by the agent of the company that he would cancel the policy and return the unearned premium the following day, Mr. Hathorn merely replied, "very well—all right." Instead of remaining gruffly silent, he politely answered, in substance, "as you choose." He had nothing to do, unless indeed he then, as a matter of courtesy, promised to bring the policy to the office to be canceled; and if he did so promise, according to his own testimony he fulfilled it.

Perhaps it should be remarked, that in so far as there is any conflict between the agent and Mr. Hathorn, it is settled by the finding of the learned judge who tried the cause. He finds against the defendants, on the question of waiver. But I do not observe any very serious conflict in the statements of the agent and Mr. Hathorn. They give the transaction substantially alike.

The judgment awarded at special term seems well warranted, in fact and law.

Some exceptions were taken to the admission and rejection of evidence, but none of them are of sufficient importance, as we think, to demand particular comment.

Judgment affirmed, with costs.

[SARATOGA GENERAL TERM, November 1, 1869. *Rosekrans, Potter* and *Bockes,* Justices.]