By the Court — Robertson, J.
Under the evidence and charge to the Jury in this case, the only embarrassment grows out of that part of the complaint which states a cause of action arising out of the execution of the policy, of which a copy is annexed. The testimony of Kelly, one of the plaintiffs, by itself, shows clearly the making of an independent oral contract to insure, irrespective of any agreement to deliver a policy. The question of the reliability of such testimony, and the making of such contract, were fairly left to the Jury, as matters of fact. . The only questions to be considered in regard to such contract, *95 are those raised by the requests to charge, to wit: Whether, as the parties contemplated the making of a policy in a certain form, the same conditions were grafted on such contract as would be contained in such form, and whether the tender of a policy in such form and demand of the premium, and the refusal of the latter, would not terminate the oral contract. I apprehend no such construction can be given to the original contract: otherwise if the policy had failed to be returned from Philadelphia before the beginning of the risk, the plaintiffs would have been without insurance altogether. It certainly became binding the moment it was made, and the utmost effect that can be given to the additional promise to execute a policy in a certain form, is that, upon the tender of that policy, and a demand of the premium, the oral contract should cease. But, in this ease, no such policy was ever prepared; the only one prepared,* was one that declared it to be only obligatory when ratified by the agent for the defendants. Unless the defendants waived that condition when tendering it, if they ever made such tender, they could not escape from the continuing obligation of the oral contract. In regard to that branch of the case, the charge, of the Court, as well as its refusal to charge, is unimpeachable.
So, too, the refusal to charge that Campbell was not the agent of the defendants, in regard to any material fact, is warranted by the facts. The only important point of his agency was his receipt of the policy. There was evidence that Hewson, the acknowledged agent of the defendants, employed Campbell to deliver the policy, and receive the premium. His delivery of it was, therefore, theirs, as he did not make it until he received the premium. There was no pretense that the delivery to Campbell was as the agent of the plaintiffs; indeed, the defendants contended to the contrary. In regard to the premium, it was actually paid before the policy was delivered, and its prepayment formed no part of the oral contract to insure. It was not necessary, therefore, to establish either its waiver, or any *96 authority to waive it. What the parties intended in regard thereto, is wholly immaterial, if such intent was not conveyed in the language by which the contract was formed The payment of the premium, after the fire, did not affect the agreement between the parties; by the oral contract credit was given to the plaintiffs for it, at least until a proper policy should be tendered, and such premium demanded. The conflicting testimony of the plaintiff, Kelly, and Oampbell’s clerk, (Orary,) left it uncertain whether the premium ever was demanded, and the actual payment corresponded in time with Kelly’s last promise to pay it. Campbell, at all events, in demanding the premium, for which he was the agent of the defendants, never dealt with the plaintiffs as though desirous of ending the oral contract, since he sent to them several times for it. I do not see how, if the defendants chose to carry out their agreement to execute a policy, by receiving the premium, its time of payment, whether before or after the fire, could make any difference. The only point remaining in the requests to instruct, except that as to the interview between one of the plaintiffs and a temporary representative of Campbell, is the refusal of the Court to instruct the Jury that the policy in question was inoperative, because it was not countersigned by the agent of the defendants.
The complaint clearly contains two causes of action, although, perhaps, not distinctly enumerated as such. The statement of the second cause, growing out of the written policy, would necessarily have been insufficient to maintain a legal action, without the allegation of waiver of the countersigning of such policy by the agent for the defendants. In the absence of that, it might have been sustained as an action to compel the countersigning, and then to recover on such countersigned policy, which are causes of action that may be joined. (Bunten v. Orient Insurance Company, 8 Bosw., 448.) But the summons is merely for a money demand on contract, and there is no demand for relief, except damages. The complaint concedes the inefficiency of the policy, unless properly deliv *97 ered and the signature of the agent waived; while the answer virtually admits its efficiency, if both those contingencies occurred. The request, therefore, to charge absolutely that “ the policy was ineffective and inoperat- “ ive, for the reason that it was not countersigned by the “ agent,” was too broad and general, without the qualification, unless such signature by such agent was waived. A charge in the form requested would have been, in substance, that nothing could atone for the absence of the signature. The defendan ts had a right to aslc that the Jury might be instructed, that unless the plaintiffs proved the waiver, they could not recover, because that was the issue, but not merely and absolutely that a policy in the same form, unsigned by the agent, was not binding, because no such issue was involved, notwithstanding the change in the form of pleading, Juries are confined in their findings to the issues actually made by them. Indeed, the Court, by charging that the plaintiffs were entitled to recover, “ if the policy was delivered to them, nothing remaining “ to he done, the defendants being competent to waive any “provision in their policy that it should not take effect unless “ certain things were done,” or “ if it was handed to them “as intended to he an effectual agreement binding on the “ defendants,” virtually conceded the effect of the conditions as to countersigning and prepayment of premium, and every other provision to render it inoperative, contained in it. It virtually said the converse; that if anything remained to be done, required by the policy to be done to make it binding, or if it was not intended to be an effectual agreement binding on the defendants, it was not so. Hot much stress was laid, in the argument, upon this, and no great reliance was probably placed upon it at the trial.
The only remaining point as to which an instruction was requested was, the conversation between one of the plaintiffs and Brewster, a temporary representative of Campbell ; this was to the effect, that what was said or done by the former to the latter, was not a tender of the premium *98 to the defendants. In the view I have taken of this case, it was not necessary for the plaintiffs to tender- any premium ; it was not alleged in the complaint, and the plaintiffs’ case did not depend upon it. As to the exception taken to the admission of the conversation, it was properly overruled. The evidence shows that Campbell, being employed as a sub-agent by Hewson, to deliver the policy and receive the premium, and interested to earn his commissions as a broker, sent to Kelly to notify him the policy was ready; the latter went to the office of the former to procure a change in the policy, and found Campbell unwell in an adjoining office, who employed a friend (Brewster) to receive Kelly’s communication; he did so, wrote a memorandum of it, and put it in the policy, where it was seen by Campbell. It was sent by him to Hewson, but went to Kelly by. mistake. Kelly had a right to show that he had not refused, but only delayed, with the defendants’ assent, to pay the premium ; that he went to Campbell’s office to give his reason for such delay, and that such reason was communicated to Campbell. When they delivered him the policy and returned the memorandum, which return, he had reason to believe, was virtually a denial of his request, he promised to pay the original premium, and paid it at the time. The taking down of such conversation by Brewster, and the making of such memorandum and inclosing it to Campbell, were features in the dealings between the parties, to show that there never had been any intention to abandon the contract of insurance with the plaintiffs. The defendants, at that time, could have sued him for the premium and recovered; there was no reason why they should not be equally held for the insurance, unless, upon a tender of the policy and a peremptory demand by them for the premium, the plaintiffs had refused to pay it. The evidence was admitted in the first place, subject to be stricken out, if not connected with the defendants. The Court instructed the Jury that it was immaterial No application was made to strike it out, but simply a request- to pass upon its effect, while the defendants *99 themselves introduced Brewster and Campbell to testify as to such conversation. Under such circumstances the exception should not prevail.
Hewson’s reasons for not signing the policy were wholly immaterial and properly excluded. The question of the Juror, which was objected to, “ Would it have been a per-“feet policy, if he had paid the premium?” had once already been put and answered, without objection; it was not objected to until repeated, and seems to have been put more with a view either of calling the witness’ attention to the impropriety of sending an imperfect policy to procure the premium, or inducing him to reflect whether he did so, or, perhaps, showing that the signing by the agent had been waived. It certainly was not designed to get at the witness’ opinion on a mere question of law. There is one view in which, even in that aspect, the question was not objectionable. The policy purports to be made in the State of Pennsylvania, and, of course, should be governed by its laws, in its interpretation; the witness had been agent for an insurance company of that State, and might have been familiar with its laws upon that subject; at all events, the objection was not put upon the ground that he was not an expert, which the objector is bound to specify. I have not been able to find any authority for the responsibility of a party for a Juror’s improper question; one has as much right to except to it as another, and neither has the power to withdraw it. It would be rather hard to make either party suffer for the illegal questioning of a Juror. A more appropriate remedy would be to move to strike out the answer, or to call upon the Court to direct the Jurors to disregard it. But in this case the defendants were too late with their objection, after allowing the question to be asked and answered once without it.
Hewson clearly was not proved to be such an expert as to allow him to testify as to estimated damage, if such a mode of proof is admissible at all, and the question put to him to that effect was properly excluded.
*100 From all the circumstances, it appears that the Jury had a right to find, that a valid oral contract to insure was made, determinable on the execution and delivery of a written contract; that such delivery and the rigorous demand of the premium, so as to terminate the oral contract, was delayed until after the fire ; that the premium was then paid, and an imperfect policy delivered, intended to have been made perfect, by the defendants, on the payment of the premium. It is clear that for such premium the defendants, on the 28th of June, intended to have taken the risk of $2,000 for a year; they had a right to stop the credit for the premium and the oral contract, by presenting a perfect policy and demanding the former. They did not exercise the right, and when a loss has occurred, they seek to evade it. Their agent did not put his objection to their liability, at first, upon any ground but the omission to countersign.
The judgment and order denying a new trial must be affirmed, with costs.