TAYLOR vs. THE PHŒNIX INSURANCE COMPANY OF HARTFORD.

INSURANCE AGAINST FIRE.  *Oral agreements with agent.  What constitutes a new contract of insurance, or a waiver of conditions.*

After a policy of insurance against fire had expired, the assured spoke with the agent of the insurer, stated that he was going away, to be gone a week or ten days, and wanted to renew the insurance before he left; to which the agent answered, "All right." The assured then asked, " Won't you do it for two per cent?" being a reduction on the rate previously charged; and the agent said he would. The assured asked, whether there was anything else the agent wanted him to do; and the latter answered, "No, nothing else; I have the description in the office, and will attend to it." The assured said further that he wanted "to renew the old policy, the same as it was before, in the same company, to the same amount;" and the agent answered, " All right." The assured went away the same day, returning in about ten days; and the property was destroyed by fire the next day after his return. There is no other proof of a renewal of the policy or the issue of a new one; the new premium was not paid; and the old policy contained a condition that it should be void if the premium remained unpaid, and that the insurance might be renewed provided the premium therefor should be paid, etc. *Held*, that the facts stated do not show a new contract of insurance *in præsenti*, or a waiver of the conditions of the policy.

TAYLOR, J., dissents.

APPEAL from the Circuit Court for *Rock* County.

Action upon a policy of insurance against fire issued by the defendant company to the plaintiff. The original policy had expired before the loss, but the plaintiff alleges that it had been renewed by an oral contract between himself and the

company (through its agent), and was in force when the property was destroyed. The policy contained a condition that it should be void if the premium remained unpaid; also a provision that the insurance might be renewed for any agreed time, "provided the premium therefor is paid," and indorsed on the policy or receipted for.

Whether the policy was renewed, was the question litigated on the trial. No question is raised on the pleadings, and it is unnecessary to state them. The evidence is sufficiently stated in the opinion. Plaintiff appealed from a compulsory judgment of nonsuit.

For the appellant, there was a brief by *Cassoday & Carpenter*, and oral argument by *Mr. Cassoday*.

For the respondent, there was a brief by *Bennett & Sale*, and oral argument by *Mr. Bennett*.

LYON, J. It may be assumed, for the purposes of the case, that Mr. Towne, the agent of the defendant insurance company, had authority to waive any adverse conditions in the policy, and to bind the company by an oral contract to renew it.

The proof of the alleged contract of insurance is all contained in the following testimony of the plaintiff. After testifying to a conversation with Mr. Towne before the policy expired, concerning its renewal, he proceeded as follows:

"Afterward, and on the 18th day of June, I had a conversation with Towne about renewing the policy. I met Towne in front of the post-office, and said to him: 'I want to renew that insurance of mine; I am going away to be gone a week or ten days, and I want it done before I leave.' He said: 'All right.' I then said: 'Mr. Hopkins offers to insure my property at 2 per cent., and you charged me 2½ last year; I don't want it in those local companies; I would rather have it in the same company, and have it renewed; won't you do it at 2 per cent.?' He answered: 'I will.' I said again: 'I am going to leave

for Palmyra and Brodhead, and to be gone a week or ten days; is there anything else you want me to do?' . 'No, nothing else; I have the description in the office, and will attend to it.' I said to renew the old insurance policy the same as it was before, in the same company, and the same amount; and he said: 'All right.' . I went away that day, and returned again in about ten days, on the day before the fire."

We fail to find in the above testimony satisfactory evidence of a renewal of the policy *in præsenti*. The purport of all the conversation on the subject between the plaintiff and Mr. Towne was, that the policy should be renewed thereafter; not that it was then renewed. The plaintiff said to the agent that he wanted it renewed, and desired that it should be renewed before he left home. The agent assented. They then agreed upon the premium to be paid therefor. The agent said that there was nothing more for the plaintiff to do, but that he (the agent) had the description of the property to be insured in his office, and promised to attend to the matter of the renewal. The plaintiff then directed the agent to renew the old policy the same as it was before — in the same company and for the same amount, — and the agent promised to do so. That is all there is of the alleged parol contract of renewal. It seems to us that the whole conversation pointed unmistakably to some further act to be done to renew the policy — to a renewal *in futuro*. Else, why the talk about the agent having the description in his office, and his promise to attend to the business? And why the closing direction to the agent to renew the old policy in the same company and for the same amount? If the policy was then and there renewed, the description ceased to be material, and the promise was superfluous, as was also the final direction to the agent to renew. Indeed, both the promise and direction tend strongly to prove, if they do not prove conclusively, that neither of the parties intended a contract of renewal *in præsenti*, or supposed they had made any contract other than an executory oral contract

that the company should renew the policy, and the plaintiff should pay the premium at some early future time. There is no evidence whatever inconsistent with the hypothesis that the agent was to make a certificate of renewal, and the plaintiff was to pay the premium, as conditions precedent to the renewal; or to show that the parties intended a contract out of the usual course of the business of insurance.

It is our duty to construe the alleged parol contract as established by the proofs; and we are constrained to hold that it is not a contract of insurance *in præsenti*, and contains no waiver of the conditions contained in the policy sought to be renewed.

The cases cited by the learned counsel for the plaintiff to sustain the alleged oral contract as a valid contract of insurance, have all been examined. Some of them go upon the custom or usage of the business, and all of them were necessarily decided upon their own peculiar facts. An extended consideration of them will serve no useful purpose. It is believed that none of them are in conflict with the views above expressed.

It follows that the plaintiff was properly nonsuited, and that the judgment of the circuit court must be affirmed.

TAYLOR, J. This is an action by the plaintiff to recover for the loss of a building by fire, which he alleges the defendant had, through its authorized agent, insured, or agreed to insure, by an oral agreement a few days before the loss occurred.

The evidence shows that the property destroyed by the fire, and another building owned by him, had been insured by the defendant, through the same agent, the year previous, and the policy issued on such insurance had expired May 26, 1878; that a short time before the policy expired, the agent asked the plaintiff whether he would renew the policy for another year, and the plaintiff said he would wait a short time and see, and would see him again if he wanted it insured; and that on the

18th day of June, 1878, after such policy expired, the plaintiff met the agent and had a conversation with him about renewing the policy.

The conversation, as sworn to by the plaintiff, was as follows: Plaintiff said to the agent: "I want to renew that insurance of mine. I am going away, to be gone a week or ten days, and I want it done before I leave." He said: "All right." Plaintiff then said: "Mr. Hopkins offers to insure my property for 2 per cent., and you charged me 2½ last year; I don't want it in those local companies; I would rather have it in the same company, and have it renewed; won't you do it at 2 per cent?" He answered: "I will." Plaintiff said again: "I am going to leave for Palmyra and Brodhead, and to be gone a week or ten days; is there anything else you want me to do?" The agent replied: "No, nothing else. I have the description in the office, and will attend to it." "I said: 'Renew the old insurance policy the same as it was before, in the same company, and in the same amount.' He said: 'All right.' I went away that day and returned again in about ten days, on the day before the fire." Leonard Brimmer, a witness sworn on the part of the plaintiff, testified that "he heard the plaintiff tell Towne, the agent, that he wanted his insurance renewed for another year upon his warehouse. Towne said it was all right — he would attend to it; and plaintiff said that Hopkins offered to insure it for 2 per cent., but he thought he did not want to change it out of the same company; that he would like to have it in the same company. Towne said it was all right — he would attend to it. Plaintiff said he had to go away, and he wanted it attended to; and Towne said it was all right — he would attend to it."

R. R. Brown, a witness for the plaintiff, testified that he paid the premium on the former policy to the agent Towne; paid it by the request of the plaintiff; paid it on the third day of June, 1877, and the policy was delivered to him. This policy was dated May 26, 1877, and insured the property for

one year from the 26th of May, 1877, to the 26th of May, 1878. The property claimed to be insured was burned June 28, 1878. Notice and proofs of loss were properly made after the fire; but plaintiff did not pay the premium, or offer to pay it.

The court below, on the motion of the counsel for the defendant, ordered that the plaintiff be nonsuited, and plaintiff excepted. Judgment was entered against the plaintiff, and he appeals to this court.

The policy which the plaintiff claims was, or was to be, renewed for another year, by his agreement with the defendant's agent, contained, amongst other things, the following clauses: "This insurance may be continued for such further time as shall be agreed upon, provided the premium therefor is paid and indorsed on this policy, or a receipt given for the same; and it shall be considered as continued under the original representation," etc.; "and if the premium shall be unpaid, the policy shall be void."

It is insisted by the learned counsel for the respondent, that no valid contract of or for insurance could be made by the respondent's agent unless the premium therefor was first paid by the insured, and that the agent could not bind the company by any waiver of the payment of such premium; or, if this was too broadly stated, that the plaintiff could not recover unless the premium was paid, or there was express proof that the agent agreed to trust the insured for the premium, and that the evidence does not show that the plaintiff promised to pay the premium, or that the agent agreed to trust him for the payment thereof.

I do not understand the learned counsel for the respondent as contending that the conversation between the plaintiff and the agent of the respondent did not amount to an agreement on the part of the agent to insure the property of the plaintiff presently, but that such agreement to insure was void in law, either, *first*, because there was no express agreement on the

Taylor vs. The Phœnix Ins. Co. of Hartford.

part of the plaintiff to pay the premium at any particular time, and no express agreement on the part of the agent to trust the plaintiff for such premium; or, *second*, because by the terms of the policy the agent had no power to waive the payment of the premium, and by its terms the policy was, void unless the premium was in fact paid, or a receipt given therefor.

If the nonsuit had been granted upon the ground that the proof did not show a present insurance by parol of the property destroyed, I am inclined to think there would have been great force in that position. The policy which was sought to be renewed, contains a provision that it shall be renewed only when the premium is paid and indorsed upon the policy, or a receipt given for the same. It may well be said that as the policy itself in the hands of the insured notifies him that it can only be renewed in a certain way, he must see to it that it is renewed in the way therein marked out, otherwise it will be void. But all writers upon insurance make a distinction between an agreement to insure and an actual insurance; and it is held that even those companies whose charters provide that all policies of insurance issued by them must be in writing, may yet bind themselves by a parol contract to insure; that as every contract of insurance must be preceded by a preliminary contract to insure, involving an agreement between the parties as to the terms upon which the insurance shall be granted, such preliminary contract binds the company; and, if it afterwards refuses to issue the policy, the party seeking the insurance may compel the insurer to issue the same according to the terms of such preliminary contract; or, if a loss occur before the policy is issued, he may sue upon the contract and recover as damages the same sum he would have been entitled to recover had the policy in fact been issued in pursuance of such contract. *Rockwell v. Ins. Co.*, 4 Abb. Pr., 179; *Perkins v. Ins. Co.*, 4 Cow., 666; *Angel v. Ins. Co.*, 59 N. Y., 171; *Lightbody v. Ins. Co.*, 23 Wend., 25.

The case of *Kelley v. Ins. Co.*, 10 Bosw., 82, was a case very much like the one at bar in all its circumstances. Kelley wanted an insurance on his stock. The agent of the defendant company came to his store, examined the stock, made a survey, and said to the plaintiff, "that he would take the risk, make out the policy and send it down, at 70 cents ($14 on $2,000); that he would make it binding from the first of July; and that plaintiff should have the policy." Nothing was said about the time the premium should be paid. The only respect in which it differs at all from this case is, that in this case the agent did not, in express words, say upon what date he would make the renewal of the insurance take effect. It was insisted in that case, as in this, that as the policy contracted for contained a provision that it should be void unless the premium was paid, and requiring prepayment to make it valid, no recovery could be had unless the premium was paid before the loss. The court held that an oral contract to insure, supported by a sufficient consideration, which is to take effect forthwith, although entered into contemporaneously with an agreement by the insurers to deliver a policy, and by the assured to accept subsequently, as a substitute therefor, a written policy by the former in the form usually adopted by them, becomes binding and remains in force until the delivery or tender of such policy; and until such delivery or tender, the condition of prepayment of the premium usually inserted in such policies to make them binding, unless expressly adopted by the parties in such oral contract, forms no part of the contract of insurance between them.

The court on the trial charged the jury, if they found the facts as stated by Kelley, and as I have above quoted them, "they would constitute a contract between the parties, and the defendant would be liable, because under such state of facts the delivery of the policy would be immaterial;" and upon the appeal the court sustained this charge. And it was further held that, to relieve itself from the effects of such parol con-

tract, it was necessary that the company should tender the policy and demand the premium, and that a tender of a policy which was not properly countersigned by the agent in order to make it binding on the company, and a demand of the premium upon such tender, and nonpayment of the premium, would not defeat a recovery on the oral contract.

The general principles of the decision above quoted are supported by an abundance of authorities.

There can be no doubt that, in the case at bar, the agent with whom the plaintiff was dealing, having power not only to contract for insurance, but to issue and deliver policies, could bind the company by a parol agreement to insure the plaintiff's property and issue a policy therefor; and if the plaintiff had shown that he had agreed to issue the policy, to take effect on and after the day the conversation was had, and that the premium should be paid when the policy was made out and delivered, the company would have been bound to have paid the loss.   The other members of this court having, after mature deliberation, arrived at a different opinion, it it would be arrogant for me to say that it is clear that the evidence in this case shows that such a contract was made between the plaintiff and the agent; but I am constrained to say that, to my mind, it is clear from the evidence that such was the intention of the parties, and that both so understood it at the time.   The agent, by his subsequent statement, in effect admits that he so understood it, and that the reason he did not make out the policy was because he had learned the plaintiff had sold the property.

It would be, I think, a fair test of what the contract was, to consider what would have been the liability of the plaintiff if the agent had made out a renewal of the policy, to take effect from the day of the conversation, and had tendered the policy and demanded the premium on the day the plaintiff returned from his business abroad, the day before the fire.   In that case it appears very plain to me that the plaintiff would

have been liable for the premium, and that in an action therefor by the company the company must have recovered.

To my mind it is not giving a just construction of the parol agreement to say that either party understood that the contract for insurance was for an insurance to commence in the future at some indefinite time, or not to commence at all unless the agent should see fit to make out and deliver a policy. The agent could not so have understood it.

The plaintiff had before informed the agent that, in case he concluded to continue the insurance, he would see him again about it. He does see him again, and very clearly informs him he wishes to continue the insurance for another year. All the terms of·insurance are agreed upon, including the rate of premium. The agent is informed that the plaintiff was about to leave his home for a week or ten days, and says he wants it attended to before he leaves. The agent tells him he will attend to it — that it is all right; and when asked if there is anything further he wants from the plaintiff then, he says no, and makes no suggestion that no insurance can be made until the premium is paid. Under this state of the facts of the case, it appears to me, the fair inference is, that both parties understood that the intention was to have an insurance upon the property from the time the conversation took place; or, if not, within· such reasonable time as the· agent could make out the necessary papers and entries.

It is against the whole tendency of the language used to say that there was no obligation on the part of the agent to go on and make out the necessary renewal papers until the plaintiff again called upon him and tendered him the premium, and demanded them of him. If such construction be given, then there would seem to be no reason for the conversation at all, as it all amounted to nothing, unless further negotiations were had. It seems to me a just inference from the conversation that the plaintiff was to leave presently, to be absent for a week or ten days, and that he desired to have the property insured before he left.

The fact that he was about to leave was made a prominent reason for making the agreement to insure then. There would be no sense in the plaintiff's making importance of the fact that he was to be absent about eight or ten days, as a reason for negotiating for insurance, if he did not intend to be insured until he returned. Without further discussing the evidence on the facts, I am of the opinion that there was a contract on the part of the defendant's agent to insure the plaintiff's buildings presently, and that such contract binds the defendant; or that at least there was sufficient evidence to sustain this view of the case to carry the case to the jury, and that it was error on the part of the court below to take the case from the jury and direct a peremptory nonsuit.

*By the Court.—* The judgment of the circuit court is affirmed.