KING vs. THE HEKLA FIRE INSURANCE COMPANY.

*October 23 — November 20, 1883.*

INSURANCE AGAINST FIRE: EVIDENCE. *(1, 2)* Oral contract for renewal: Evidence of instructions to agents. *(3)* When contract complete. *(5)* Neglect of agent of insured as to renewal receipt. *(4)* Denial of liability is a waiver of proofs of loss.

1. In an action for the breach of a contract to renew a policy of insurance, evidence of the instructions given by the plaintiff to his agent who acted for him in making the contract is admissible for the purpose of showing what the contract for renewal was — its precise terms and conditions.

2. But, in such action, where the agent of the defendant company has stated that he told the plaintiff's agent that the company refused to renew the policy, evidence that he had been instructed by the company not to renew the policy is not admissible for the purpose of confirming such statement.

3. If, previous to the expiration of a policy of insurance, the agent of the company agrees orally to renew the policy, and that he will attend to it right away, and the minds of the parties meet as to the terms of such agreement, and nothing remains to be done except that the agent of the company shall make out and deliver the renewal receipt and that the insured shall then or at some subsequent time pay the premium, the agreement is binding upon the company, and it can avoid liability thereon only by tendering the renewal receipt and demanding the premium and the failure of the insured to pay the same, or by giving notice to the insured, before a loss, that it refuses to carry the risk. *Taylor v. Phœnix Ins. Co.*, 47 Wis., 365, distinguished.

4. A denial by an insurance company, after a loss has occurred, of all liability or that it had any risk on the property burned, constitutes a waiver of the proofs of loss required by the policy.

5. If a contract to renew a policy of insurance has, in fact, been made, the neglect of the agent of the insured to ascertain whether the renewal receipt has been made out, will not relieve the company from liability on such contract.

APPEAL from the Circuit Court for *Dane* County.

Action to recover damages for the breach of an oral contract to renew a policy of insurance against fire. It appears that policies had been issued by the defendant company upon the dwelling-house of the plaintiff, and upon his store or saloon, both of which were to expire on January 15, 1882. Prior to that date the plaintiff, by his agent Robine W. King, requested one Blair, the agent of the company, to renew both policies. Blair said he would attend to it and make out the renewals right off and bring them down to the store. A few days later Blair went down to the store where Robine W. King was, and handed him an envelope, telling him that it was the renewal for the dwelling-house. The plaintiff's evidence tended to prove that Robine thereupon asked Blair where the renewal for the saloon was, and that Blair answered that he had not made it out but would do so right away. Blair, however, testified that nothing whatever was said at that time in relation to the renewal of

the policy on the saloon.   Robine handed the envelope back to Blair and told him that if he would wait until Byron King (another brother and agent of the plaintiff) came in the latter would pay him.   Blair said, " All right; any time," and left the store, but met Byron and gave him the renewal receipt in the envelope.   Byron said he had not the money with him, but would get it.   Blair said he could pay the next time they met.   Blair testified that when he gave the renewal receipt to Byron, he told the latter that it was the renewal on the house, and that the company refused to write on the saloon; but this is contradicted by Byron, who testified that nothing was said in that interview about the policy on the saloon.   Byron did not examine the receipt given to him.   The amount of the premium on the renewal of the policy on the dwelling-house was a short time afterwards paid to Blair by Byron, who testified that he did not know whether it was for a renewal of both policies or one, but had an idea it was for both.   Nothing further was said or done by either party in relation to the renewal of the policy on the saloon until after the building was destroyed by fire, in April, 1882.

A motion for a nonsuit, made at the close of the testimony, was denied.   The following instruction, among others asked by the defendant, was refused:

" *Tenth.* If Byron King received the paper or the envelope containing it, and paid the money for the premium of the insurance on the house without inquiry or investigation as to the fact whether it contained a renewal certificate on the store or saloon, and Blair did not say or do anything to mislead him on the subject, then the fault or neglect of Byron King to so inquire or examine was the fault and neglect of the plaintiff, and the consequences thereof are chargeable solely on him and not on the defendant; and in such case it would be his fault that he did not secure a renewal certificate of the policy on the store."

Other facts are stated in the opinion. There was a verdict and judgment for the plaintiff, and the defendant appealed.

The cause was submitted for the appellant on a brief signed by *J. H. Carpenter*, as attorney, and *S. U. Pinney*, of counsel. To the point that the transactions between the agents of the respective parties were merely the preliminary negotiations — the initiatory steps, towards a contract, and did not result in a binding agreement, they cited: *Taylor v. Phœnix Ins. Co.*, 47 Wis., 365; Wood on Fire Ins., 35; *Neville v. Merchants' Ins. Co.*, 19 Ohio, 452; *Belleville Mut. Ins. Co. v. Van Winkle*, 12 N. J. Eq., 343; *Hambleton v. Home Ins. Co.*, 6 Biss., 91; *Patterson v. Benj. Franklin Ins. Co.*, 81* Pa. St., 454; *Schaffer v. Mutual Fire Ins. Co.*, 89 id., 296; *Tyler v. New Amsterdam Ins. Co.*, 4 Robt. (N. Y.), 151; *Real Estate Mut. Ins. Co. v. Roessle*, 1 Gray, 336; *Myers v. Liverpool, L. & G. Ins. Co.*, 121 Mass., 338; *Hughes v. Mercantile Ins. Co.*, 55 N. Y., 265; *Bradley v. Potomac Fire Ins. Co.*, 32 Md., 108; *Sargent v. National Ins. Co.*, 86 N. Y., 626; *Kimball v. Lion Ins. Co.*, Weekly Underwriter, Sept. 8, 1883, p. 133.

For the respondent there was a brief by *L. K. Luse*, as attorney, and *I. C. Sloan*, of counsel, and oral argument by *Mr. Luse*. To the point that the evidence showed a complete contract to renew the policy on the building burned, they cited: *Northwestern Iron Co. v. Ætna Ins. Co.*, 23 Wis., 160; *Strohn v. Hartford Ins. Co.*, 33 id., 648; *Scott v. Home Ins. Co.*, 53 id., 238; *Revere Ins. Co. v. Chamberlin*, 56 Iowa., 508; *Weibeler v. Mil. M. Ins. Co.*, 30 Minn., 464; *Davenport v. Peoria M. & F. Ins. Co.*, 17 Iowa., 276; *Commercial Ins. Co. v. Union Ins. Co.*, 19 How., 318; *Robinson v. New Eng. F. & M. Ins. Co.*, 25 Ind., 536; *Trustees Baptist Church v. Brooklyn Ins. Co.*, 19 N. Y., 305; *Angell v. Hartford Ins. Co.*, 59 id., 171; *Audubon v. Excelsior Ins. Co.*, 27 id., 216; *Kelly v. Comm. Ins. Co.*, 10 Bosw., 82; *Post v. Ætna Ins. Co.*, 43 Barb., 351.

COLE, C. J.   This action is brought to recover damages for a breach of a contract to insure the plaintiff's store or saloon.   The property was insured by the defendant company by issuing the usual policy in writing for one year, the risk expiring on the 15th day of January, 1882.   The claim of the plaintiff is that prior to the expiration of the policy the company, by its duly authorized agent, agreed to renew the policy, but that the company, after the property was destroyed, early in April, 1882, denied its liability for the loss, and insisted that the policy had never been renewed. The alleged agreement to renew was by parol.   The learned counsel for the defendant concedes that a valid contract to insure or to renew a policy of insurance may be made by parol; but he insists that the evidence wholly fails to show that any oral contract to renew was ever actually made. This, of course, raises a simple question of fact upon the evidence.   As we understand the proofs in the case, there was sufficient testimony given on the part of the plaintiff on the trial which warranted the jury in finding that the company, by its authorized agent, made a valid contract to renew the policy.   There is testimony positive and clear to that effect. It is unnecessary to recapitulate it here.   It is true, all this testimony was distinctly and positively denied or contradicted by the defendant's witnesses, especially by the agent who, it is alleged, made the contract.   But the probative effect of the testimony, the conflicting statements of the witnesses, and what was the real truth of the matter, were questions submitted to the jury under proper instructions.

It is certainly a correct proposition to say that the company could not be held liable for the loss unless a complete contract to renew was made by its agent — a contract that was mutually binding upon the insurer and insured.   The transactions between the agents of the respective parties must have been something more than mere preliminary negotiations or conversations about renewing the policy; they must

have resulted in an actual contract to renew the existing policy upon terms well understood at the time. And as the contract to renew was oral, the *onus* was doubtless upon the plaintiff to prove to the satisfaction of the jury that such a contract was made. The learned circuit court instructed the jury according to these views, and the jury, upon the evidence, found for the plaintiff. This fully disposes of some points which are discussed by defendant's counsel in his brief.

There remains to be considered some exceptions which were taken to the rulings of the court in admitting or excluding evidence, in giving certain requests asked on the part of the plaintiff, and refusing some instructions asked by the defendant. We shall not attempt to notice all these exceptions in detail, but barely indicate our views upon the more material ones.

Robine W. King was sworn as a witness for the plaintiff. He had acted for the plaintiff in making the alleged contract with the agent of the defendant. He was asked what the plaintiff told him about seeing Blair, the defendant's agent, in regard to insurance, and what instructions were given him as to the transaction of the business. The evidence was objected to, but admitted. The fact that the witness was authorized to act for the plaintiff in the matter was conceded, but it is said he should not have been permitted to testify as to what instructions had been given him. We cannot see any valid objection to the testimony, in view of the purpose for which it was offered. Its plain object was to prove what the contract for the renewal was: its precise terms and conditions. But it is further said the court refused to allow Blair to testify as to what instructions he had received about renewing the policy on the store or saloon. As a matter of fact, Blair did state that when he handed the renewal receipt on the dwelling-house to Byron King he informed King that the company refused to renew the policy on the store. And the witness testified

that he never did in fact agree to renew that policy, thus flatly contradicting plaintiff's witnesses, who had testified that when he delivered the renewal receipt on the house he was asked where the renewal receipt for the store was, to which he replied that he had not made it out, but "would right away." It was proposed to show, by entries made in the register kept by Blair, that he had been instructed not to renew the policy on the store. It was not claimed that notice of these entries or of the secret instructions ever came to the knowledge of the plaintiff or his agent. The real purpose of the proposed testimony was to confirm the statements of Blair that he informed Byron King that the company refused to renew that policy. Such being its object, we do not think there was any error in refusing it.

There were three instructions given at the request of the plaintiff which were excepted to. The second and third read as follows: *Second.* "If you 'find from the evidence that the parties agreed that the insurance should be renewed without a payment of premium, and their minds met and they fully understood the terms of such renewal in all respects, and nothing remained to be done thereafter except to make out the renewal receipt on the part of the company, and the payment of the premium by the plaintiff, notwithstanding this was a verbal agreement, it was nevertheless a valid contract for the renewal of the policy, and the defendant is liable for the loss to the amount of the insurance." *Third.* "If you find that previous to January 15, 1882, the defendant company had issued a policy of insurance upon the building and stock in question which would expire on that date, and that about the time of its expiration the agent of the company, for and in its behalf, agreed with the plaintiff or his authorized agent to renew said policy, and that he, the agent of the company, would attend to it right away; and that their minds met as to the terms of such agreement; and that there was nothing further to be done

between the parties, except that the agent of the defendant should make out and deliver to the plaintiff or his agent the renewal receipt or evidence of renewal, and that the plaintiff or his agent should then, or at some subsequent time, pay the premium,— then I instruct you that such an agreement would bind the defendant company to renew the policy, and they could only avoid liability upon such contract by tendering the renewal and demanding the premium, and the failure of the plaintiff to pay the same; or by giving the plaintiff or his agent notice that the defendant company had refused to carry the risk; and such tender of the renewal and demand of the premium, or the giving of the notice as before stated, in order to relieve the defendant from liability, must be done before the loss accrued and before they knew of the loss."

We think these instructions were correct as propositions of law, and were applicable to the evidence given on behalf of the plaintiff. The first instruction was, in substance, that if the company, upon being informed of the loss, denied that the policy was renewed, and asserted that the company was in no way liable for the loss, and had no risk thereon, that this would amount to a waiver of the written notice and of the proofs of loss as prescribed in the policy. It seems obvious, if the company denied all liability on the ground that it had no insurance on the property, that it could not be necessary for the plaintiff to make proofs of loss.

Some of the instructions asked by the defendant were given, while others were refused. We do not think, however, that any request was refused which was proper and applicable to the case, and which was not embraced in the charge of the court. The proposition embraced in the tenth instruction, in substance was that the neglect of Byron King to investigate and find out when Blair handed him the envelope containing the renewal receipt on the house, whether it did not also contain the renewal receipt on the store, in

some way affected the liability of the company, is unsound. A contract to renew the insurance was or was not made. If it was made, any neglect of Byron King to ascertain or find out whether the renewal receipt for the store had been made out, would not relieve the company from its contract. This seems too plain to require discussion.

. *Taylor v. Phœnix Ins. Co.*, 47 Wis., 365, was an action upon the policy itself. The court held that the parol negotiations did not amount to a complete contract of insurance *in prœsenti*, and therefore that there could be no recovery on the policy. The case is very plainly distinguishable from the one at bar.

Without further dwelling upon the case, we will say that we see no error in the record of which the defendant can complain.

*By the Court.* — The judgment of the circuit court is affirmed.