CAMPBELL, Respondent, vs. THE AMERICAN FIRE INSURANCE COMPANY OF PHILADELPHIA, Appellant.

*November 14 — December 4, 1888.*

*Insurance against fire: Oral contract to insure: Neglect of agent to write policy: Proofs of loss. Failure to disclose facts affecting risk.*

1. The agent of an insurance company agreed orally with the plaintiff to write a policy insuring certain property to the amount of $500, for six months from a certain time, for an agreed premium, but said that the company might be unwilling to carry the risk after he had reported it. He did not write any policy or report the risk to the company. *Held,* that, although the premium was not in fact paid, there was a valid contract to insure, upon which, in case of a loss during the six months, the plaintiff might recover from the company the value of the property destroyed not exceeding the $500.

2. The plaintiff having given the company notice of the loss, it is no defense to the action that he did not make proofs of loss in the manner which the policy, had one been issued according to the agreement, would have required, especially where the defendant has denied all liability on the ground that it never insured or agreed to insure the property.

3. The agent not having questioned the plaintiff as to what the building contained besides the property to be insured, it is no defense that it contained other property which increased the risk, unless the plaintiff fraudulently concealed that fact.

APPEAL from the Circuit Court for *Rock* County.

Action upon a contract for insurance against fire. The facts are stated in the opinion. At the close of the testimony the trial court directed the jury to find a verdict for the plaintiff. From the judgment entered on the verdict so found the defendant appealed.

For the appellant there was a brief by *Winans & Hyzer*, attorneys, and *M. H. Beach*, of counsel, and oral argument by *E. M. Hyzer* and *M. H. Beach*. They contended, *inter alia*, that there was no valid agreement to insure, no con-

tract *in præsenti.* It was expressly stated by Mr. Sprague, the agent, that he could not make such a contract, and that he did not know whether or not the company would make it. No premium for the insurance was paid at the time, and no time was fixed for its payment, and no agreement was made about its payment, the amount only being mentioned. See *Taylor v. Phœnix Ins. Co.* 47 Wis. 365. A right of action might exist against the agent for negligence; but it cannot be said that there was a contract of insurance between plaintiff and defendant simply and solely because the agent neglected to report an application, when he had not even pretended to make a contract and had expressly told the plaintiff that he could not and did not make such a contract. *Fleming v. Hartford F. Ins. Co.* 42 Wis. 616–621. This action is prematurely brought. If the parol agreement to insure is valid, the policy would be the consummation of it, and its conditions, provisions, and requirements must be complied with strictly to enable the assured to recover. The claim is not payable under the terms of the policy until sixty days after satisfactory proofs of loss are received by the company.

For the respondent there was a brief by *Fethers, Jeffris & Fifield,* and oral argument by *M. G. Jeffris.*

TAYLOR, J. The respondent brought this action against the appellant to recover the value of a quantity of hay owned by him, and which had been destroyed by fire on the 18th day of July, 1887. The facts stated in the complaint, and established by the evidence on the trial of the action, and upon which the respondent claims the right to recover of the appellant the value of the hay so destroyed, are substantially as follows: The respondent alleges in his complaint that one Burr Sprague was an agent of said insurance company, residing at the village of Brodhead in this state, and was duly authorized by said company to

make contracts of insurance against loss by fire on behalf of said company, and issue the policies of said company therefor. The complaint then contains the following allegations: "That on and prior to the 2d day of July, A. D. 1887, this plaintiff was the owner of and in possession of a large quantity of baled hay, of the value of about $1,200, which said hay was situated, located, and stored upon lands within the village of Brodhead, Green county, Wisconsin, in a tobacco shed owned by one J. B. Kirkpatrick and in possession of Jacob Bush, situated in block 206 in said village of Brodhead. That said hay was owned by and in possession of the plaintiff herein. That said hay was on the 2d day of July, 1887, and on the 18th day of July, 1887, and just before and at the time of the fire hereinafter mentioned, of the value of about $1,200; that on the 2d day of July, 1887, this plaintiff made an agreement with the above-named defendant, through its agent, the said Burr Sprague, for the insurance of said hay by said defendant against loss or damage by fire to an amount not exceeding $500, for the sum of $3 premium, said insurance to run for a period of six months from the 4th day of July, A. D. 1887, at twelve o'clock noon, to the 4th day of January, A. D. 1888, at twelve o'clock noon, upon the hay above described; that this plaintiff, in consideration of said insurance, agreed to and did pay the said defendant $3 premium on such insurance; that on the 2d day of July the said defendant, by its agent, Burr Sprague, agreed to and with this plaintiff that the said defendant would write a policy of insurance on said hay so as to protect said plaintiff from loss or damage thereon to an amount not exceeding $500, which said insurance and policy was to take effect and be in force for six months from on and after the 4th day of July, A. D. 1887, at twelve o'clock noon; that the policy so agreed to be written was never delivered to this plaintiff, and this plaintiff is in-

formed and believes that the same was never written by the said defendant or its agent; that on or about the 19th day of July this plaintiff demanded of the said defendant and its said agent said policy so agreed to be written; that he was then informed by said Burr Sprague that no policy had been written; that on the 18th day of July, A. D. 1887, the said hay was totally destroyed by fire and rendered value-less." The complaint further alleges that the plaintiff had procured no other insurance upon said hay previous to its destruction by fire as stated; that he notified the appellant company of the destruction of said hay by fire, and demanded pay for the value of said hay so destroyed, not exceeding $500, and that the appellant refused to pay for the same or any part thereof.

The answer denies that the agent, Burr Sprague, had authority to make the contract of insurance set forth in the complaint; denies having knowledge sufficient even to form a belief as to whether the plaintiff was the owner of the hay described in the complaint, or as to whether such hay was destroyed by fire as alleged in the complaint, and requires plaintiff to make proofs of said facts; denies making any agreement to insure said hay for any sum or for any length of time, for the premium of $3 or any other premium; denies that plaintiff agreed to pay said $3 or any other sum for such insurance; denies that any policy was written or agreed to be written on said hay as alleged by the plaintiff. The answer then admits the receiving of a notice of the loss, but claims that the same was not a sufficient notice. The answer then sets up the form of the policy the company would have issued if one had been issued in conformity to the claim made by the plaintiff, and sets up that by the terms of such policy no action could be maintained against the company for any loss thereunder until sixty days after proofs of loss had been given to the company as required by said policy; and alleges that this suit is pre-

maturely brought. The answer also sets out at length the conditions of their policies in regard to proofs of loss, and alleges that the plaintiff has failed to make proofs of loss as required by such policies, and for that reason cannot recover in this action. The answer also sets up other conditions of the policies of said company in regard to surveys and representations and statements made by the insured in, regard to the insured property, and alleges that the plaintiff, in violation of the said terms and conditions, concealed from the defendant company and its agent certain facts as to what other property there was in the building in which the hay was situated at the time he applied for insurance thereon as stated in his complaint; and alleges that the other property in said building greatly increased the risk and danger from fire; and alleges that by reason of this concealment the contract for insurance alleged to have been made with the agent of the company, if so made in fact, was rendered null and void.

On the trial, it was clearly established by the evidence of Burr Sprague that he was the agent of the defendant, and had full authority to take risks against fire for said company, and issue their policies covering such risks. And no contention is made on the hearing of this appeal that such agent could not have bound the company by issuing a policy of insurance upon the hay in question.

The evidence in regard to the contract of insurance is the evidence of the plaintiff and of said agent Sprague. The plaintiff testified as follows: "I saw Mr. Sprague about that hay on the 2d day of July, 1887, about 5 o'clock P. M. He was sitting on a dry-goods box in front of Terry's store. I had a conversation with him about that hay. I said 'Sprague, I have got a little baled hay that I want to get insured.' He says, 'Where is your hay?' I told him it was in Jake Bush's tobacco shed. He said, 'How far is that shed from his house?' I told him the

AUGUST TERM, 1888.     105

Campbell vs. The American Fire Ins. Co. of Philadelphia.

shed was in the northeast corner of the block, and his house was in the northwest corner,— just across, opposite. He says, 'How much have you got, and how much insurance do you want on it?' I said $500. He said, 'I can write you in the *American Fire Insurance Company*, the same that your ice-house was insured in;' or he first asked, 'How long do you want it?' I told him two or three months, and he says, 'You better have it for six months. It will cost you no more for six months than it will for two or three months.' 'Well,' says I, 'all right.' Says he, 'I will write you the risk for $3.' He says, 'Really, the rates would be only $2.50, but I cannot write a policy for less than $3.' I says, 'That is all right; that was cheaper than I expected to get it.' I told him I was fearful about the 4th of July. It was so dry that it might get on fire. 'Oh,' said he, 'I will have the policy take effect on the 4th day of July at noon.'" The 3d of July was on Sunday.

Sprague's testimony on the same subject is as follows: "On July 2, 1887, *Mr. Campbell* told me he wished some insurance on some hay he had,— an amount of hay on which he wished insurance. I asked him as to the condition of the hay, whether it was loose hay or baled hay, and he said it was all baled hay. I asked him where it was. He said it was in the Bush barn, on what is known as the 'Bush block;' and I asked him how much he had there, and he said $800 or $1,000 worth, somewhere along there. I asked him how much insurance he wanted. He said he wanted $500 insurance. I asked him if he pressed hay there in the barn. He said, 'No;' he pressed it away from there, and stored it there. I asked him if there was any loose hay in the barn — unpressed hay. He said, 'No.' I then asked him if he knew the distance between that barn and the house, and particularly whether it was more than 100 feet. I said to *Mr. Campbell* that insurance companies did not like to take insurance on barns or property in barns,

except private barns in connection with dwellings, and I did not known whether the company would carry it,— the company that I had. He asked me the rate, and I asked him how long he wanted to insure. He said six months. I told him that the rate for a private barn in connection with a dwelling was the same as a dwelling,— one per cent. for three years, or one half per cent. for one year; that this was worth more, and I would fix the rate at one half per cent. for half a year, or $2.50 for $500; and then I added that companies did not like to have a policy written for less than $3, and I would have to charge him $3 any way. He asked me if I would write it for that. *I said I would*, but I doubted whether the company would carry it, *but I would write it and report it;* and the company was also named. I recollect that I said to him that perhaps the *American* of Philadelphia, having his other risks, he being a patron of the company, might carry it for him. My recollection is that I said to him it was a kind of risk not desirable, and I did not know whether the company would carry it *after it was written and reported.* He had insurance in the same company at the time. I did not write any policy, or make any entries of this in my register. I didn't report it to the company till after the fire. . . . This conversation was on Saturday after the usual business hours,— after I had closed my office."

This is all the evidence given on either side in regard to the contract, and it appears to us to be conclusive upon the question whether a contract to insure was made. The plaintiff testifies that there was an agreement to write the policy for $500 for six months, to take effect from 12 o'clock noon on the 4th day of July, for a premium to be paid by him of $3. The agent of the defendant testifies to the same thing, except he does not say when it was to take effect; but he does say that he agreed to write the policy for six months for the agreed premium of $3, but is silent

as to when it was to take effect; so that the only evidence on that point is the uncontradicted evidence of the plaintiff that it was to take effect at noon of July 4, 1887. The proof that the hay to be insured was destroyed by fire on the 18th of July, 1887, is not questioned, nor is there any question made as to the value of the hay destroyed. Neither is there any dispute but that the plaintiff demanded the policy after the fire, and the defendant refused to deliver it; nor that he notified the company of his loss and demanded payment before he commenced this action. The contention of the counsel for the appellant, that the evidence of the agent of the company contradicts the evidence of the plaintiff in any material point, is not sustained by the record. He admits that he agreed to issue the policy, but claims that he suggested to the plaintiff that the company might be unwilling to carry the risk after he reported it to the company. He never did report it to the company, and the company did not refuse to carry the risk before the loss occurred.

Under this evidence it is clear that if the agent had issued the policy as he admits he agreed to, the company would have been bound by it until it gave notice that it elected to cancel the same, and if no notice that it chose to cancel the same had been given before a loss it would be too late to affect the liability of the company to the plaintiff. All the evidence on the subject of the contract being before the court, and there being no material contradiction as to what the facts were, it seems to us that the learned circuit judge was correct in directing a verdict for the plaintiff upon that question. That the evidence established a contract to insure as claimed by the plaintiff, although the premium was not paid, is settled by the decision of this court in the case of *King v. Hekla F. Ins. Co.* 58 Wis. 508, and the case at bar is distinguished from the case of *Taylor v. Phœnix Ins. Co.* 47 Wis. 365, exactly as the case in 58

Wis. is distinguished. This case and the case in 58 Wis. are cases where the plaintiff bases his action upon the breach of a contract to insure, and the case of *Taylor v. Phœnix Ins. Co.* was an action upon a policy of insurance, as though issued and in force, although a policy had not in fact been issued.

That a person may maintain an action to recover damages for the breach of a contract to insure, is well established by the authorities, and the damages in such a case is the sum which the policy was to insure, if the property to be insured, and which was destroyed by fire during the time of the life of the policy as it was agreed to be issued, was of the value to be insured by the policy. Upon this question there is no dispute. If the company is liable at all it is liable for the $500. What was said by this court in the case of *King v. Hekla F. Ins. Co., supra,* is strictly applicable to the facts in this case, and the ruling in that case is supported by the elementary writers upon the subject of insurance, as well as by the authorities. *King v. Hekla F. Ins. Co., supra; Northwestern Iron Co. v. Ætna Ins. Co.* 26 Wis. 78; *Scott v. Home Ins. Co.* 53 Wis. 238; *Strohn v. Hartford F. Ins. Co.* 37 Wis. 625; *Mechler v. Phœnix Ins. Co.* 38 Wis. 665; *Fleming v. Hartford F. Ins. Co.* 42 Wis. 616; *Rockwell v. Hartford F. Ins. Co.* 4 Abb. Pr. 179; *Taylor v. Phœnix Ins. Co.* 47 Wis. 365; *Carpenter v. Mut. S. Ins. Co.* 4 Sandf. Ch. 408; *Perkins v. Washington Ins. Co.* 4 Cow. 645; *Kelly v. Commonwealth Ins. Co.* 10 Bosw. 82; *Lightbody v. North American Ins. Co.* 23 Wend. 18, 24; *Ellis v. Albany City F. Ins. Co.* 50 N. Y. 402, 405; *Commercial M. M. Ins. Co. v. Union M. Ins. Co.* 19 How. 321; *Trustees v. Brooklyn F. Ins. Co.* 19 N. Y. 305; 1 Wood on Ins. § 11, and cases cited in note 7; *Baile v. St. Joseph F. & M. Ins. Co.* 73 Mo. 371, 387.

It is also objected by the learned counsel for the appellant that there was no valid contract to insure, because the

premium was not in fact paid. This objection was overruled by this court in *King v. Hekla F. Ins. Co., supra*. It is very clear this is no valid objection to the contract. The evidence shows that the premium was agreed upon, and that there was an implied promise on the part of the plaintiff to pay the same. A promise to pay by one party is always held to be a sufficient consideration to sustain a promise to do some act by the other party, and, as was said in the case above quoted, in order to relieve itself from its promise to issue the policy, it should have issued and tendered it and demanded the premium, or it should have notified the plaintiff that he must pay the premium before the policy would be issued. Nothing of the kind was done in this case.

The offer of the company to show on the trial that the plaintiff did not disclose the fact that the barn contained some other property than the hay insured, was properly rejected upon two grounds: *First*, it is not alleged in the answer that there was a fraudulent concealment of the facts sought to be proved; and, *second*, the fact that these things were in the barn would not avoid the contract to insure, as no inquiry was made by the agent in regard to them at the time of making the contract, although he did question the plaintiff in regard to the situation of the barn. Not having questioned the plaintiff as to what the barn contained, he cannot now claim that it contained other property which increased the hazard of insurance, unless he can show that the plaintiff concealed the facts fraudulently; and there, is, as stated above, no such allegation in the answer. See *Dunbar v. Phenix Ins. Co.* 72 Wis. 492.

The objection that the plaintiff did not make proofs of loss as required by the policies issued by the company, and as would have been required by the policy had one been issued according to the agreement, is no defense to the action upon the contract to issue a policy and a refusal by

the defendant.   This  point was  expressly  decided  against
the contention of  the company in  *Baile v. St Joseph F. &
M. Ins. Co.* 73 Mo. 371.   In that case the court say: " The
company cannot be allowed to say to the plaintiffs: ' If we
had issued you a policy it would have to contain a certain
condition, and, as you  have not complied with that con-
dition, which the policy we would have issued would have
contained, therefore you cannot recover.'   This is certainly
a most remarkable  defense to interpose."   See, also, upon
this subject, *Eureka  Ins. Co. v. Robinson,* 56  Pa.  St.  266,
267.   The defendant company had  notice of  the  loss sus-
tained  by the plaintiff, and  although  the  notice was  not
given in the particular form  required by their policies it
was sufficient to entitle the plaintiff to maintain  his action
for a breach of the contract to issue a policy.

We think no further proofs of loss were required for the
further reason that the company denied all liability on the
ground that it never had agreed to insure, and in fact never
had  insured, the  plaintiff's property in any way.   This
court, as well as all other courts, hold that when the insurer
denies all liability for the loss on the ground that there has
been no insurance, or that the policy, if one has been issued,
is void on the ground of fraud or otherwise, then the com-
pany cannot insist upon a strict compliance with the terms
of the policy as to the manner of making proofs of loss.
See  *King v. Hekla F. Ins. Co.*  58 Wis. 508;  *McBride v.
Republic F. Ins. Co.* 30 Wis. 562, 568;  *Parker v. Amazon
Ins. Co.* 34 Wis. 363;  *Harriman v. Queen Ins. Co.* 49 Wis.
71, 82.

We find no error in the record.

*By the Court.*— The  judgment of the circuit court is af-
firmed.