MILLER, Respondent, vs. SOVEREIGN CAMP WOODMEN OF THE WORLD, Appellant.

*October 7—October 26, 1909.*

*Trial: Questions for jury: Death: Presumption from absence: Residence: Evidence: Parent and child: Life insurance: Waiver of proofs of death.*

1. On a jury trial where different minds might reasonably draw different conclusions from the evidence as to a fact in issue, the jury, rather than the court, should draw the inference.
2. Proof of diligent search and inquiry is not required to establish the presumption of death of a person who has been absent from his home or place of residence for seven years without being heard from.
3. Upon evidence that a son resided with his widowed mother until his majority and thereafter returned to her home frequently and made it his headquarters, and in the absence of any evidence that he acquired or intended to acquire a different home or place of residence, the trial court properly assumed that his residence was with his mother.
4. Refusal of a benefit association to recognize any claim based on the presumption of death resulting from absence was a waiver of its right to insist upon proofs of death as a condition precedent to an action on the benefit certificate.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

The plaintiff, as the beneficiary in a benefit certificate issued to her son Otto Miller, brings this action to recover $1,000. To establish the death of the insured evidence was offered tending to show that at the time the action was begun he had been absent from his home and unheard of for seven years. No evidence was offered by the defendant. The court directed a verdict in favor of plaintiff, and such ruling is assigned as error.

Otto Miller was last heard from in 1899. He was then twenty-three years of age and unmarried. He was a musician and a barber and had pursued both callings for a livelihood, and had been away from home on and off for

several years prior to his disappearance. It appears that he was devoted to his mother, writing to her frequently when he was away, and returning to her home at irregular intervals. The testimony fairly shows that in so far as the alleged decedent had any home it was with his mother. In 1899 he was engaged to be married to a young lady at Monroe, where his mother resided. In July, 1899, the plaintiff and Otto went to Salina, Colorado, where *Mrs. Miller* visited some relatives until the following July. It is not entirely clear whether she went to Colorado with the purpose of making it her permanent home, but the inference from the testimony is strong that she did not. Otto did not remain at Salina long, but spent most of his time in Denver and Boulder until December, 1899, at which time he wrote his mother from Denver. Nothing further had been heard from him up to the time of the trial. Some rumors reached plaintiff as to his whereabouts, and numerous letters were written to parties who it was thought might be likely to know of him if he were alive. The plaintiff continued to make the required payments on the benefit certificate for the seven years after the disappearance of her son.

For the appellant there was a brief by *Jeffris, Mouat, Smith & Avery,* attorneys, and *Arthur H. Burnett,* of counsel, and oral argument by *M. O. Mouat.*

*J. M. Becker,* for the respondent.

BARNES, J.    It is contended by the defendant that the evidence offered was insufficient to raise the presumption of death and that a verdict should have been directed in its favor. If this contention be not well taken, then it is urged that the jury should have been permitted to pass upon the principal issue in the case.

Some of the more modern cases hold that an interested party seeking to establish the death of another may not rely on the absence of such party from his home or place of

residence for seven years without being heard from as being sufficient to raise a presumption of death, but in addition thereto it must be shown that diligent search and inquiry have been made and all available sources of information exhausted without result before a *prima facie* case of death is established. *Modern Woodmen of America v. Gerdom,* 72 Kan. 391, 82 Pac. 1100, 2 L. R. A. N. s. 809, and cases cited. If this rule is adopted by this court the judgment could not be sustained. While a considerable amount of evidence of search and inquiry was offered by plaintiff and was not contradicted, still different minds might reasonably draw different conclusions as to whether the search was sufficiently diligent, thorough, and exhaustive to meet the requirements of the rule. In such a case the jury rather than the court should draw the inference. The rule stated by Mr. Greenleaf is that:

"After the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved upon the other party. . . . It is sufficient, if it appears that he has been absent for seven years from the particular state of his residence, without having been heard from." 1 Greenl. Ev. § 41.

Other treatises on the law of evidence state the rule in substantially the same way. 4 Wigmore, Ev. § 2531; Jones, Ev. (2d ed.) § 61 (57). Each of the authors named cites an abundance of cases in support of the rule announced. In *Cowan v. Lindsay,* 30 Wis. 586, this court adopted, without qualification, the rule as laid down in Greenleaf on Evidence, and has reiterated such rule in *Whiteley v. Equitable L. Assur. Soc.* 72 Wis. 177, 39 N. W. 369, and in *Wis. T. Co. v. Wis. M. & F. Ins. Co. Bank,* 105 Wis. 464, 81 N. W. 642, although it was not necessary to the decision of either of the two cases last cited to do so. Thus it will be seen that the court is firmly committed to the general doctrine which does not require proof of diligent search and

inquiry in order to establish the presumption of death when a person has absented himself from his home or place of residence for seven years.

To hold in this case that the home of the plaintiff was not that of her son would be equivalent to holding that where a son has reached his majority, and has made it a practice to work away from home at times, he thereby loses his domicile with his parents, at least in the absence of direct evidence on his part of intention not to change his place of residence.

The plaintiff is a widow seventy-two years of age. She had six children. One died in 1898 and one in 1899, and three others died prior to 1898, so that Otto was the only living child and heir when his mother went to Colorado in July, 1899. Otto appears from the evidence to have been an affectionate son, returning often to the home of his mother, and writing her very frequently during his absence. The death of the plaintiff's daughter Emma in 1899 was the immediate cause of her going to Colorado. While there Otto made her numerous visits up to the time of his disappearance. There was nothing to suggest that he had acquired or intended to acquire a home or place of residence different from that of his mother. Intention is almost invariably a controlling element in determining residence. In Pennsylvania it is held that:

"Residence is, indeed, made up of fact and intention; that is, of abode with intention of remaining. But it is not broken by going to seek another abode; but continues until the fact and intention unite in another abode elsewhere." *Pfoutz v. Comford*, 36 Pa. St. 420, 422.

Other courts hold that a person leaving his place of residence with the present intention of abandoning it thereby ceases to be a resident of such place. *Swaney v. Hutchins*, 13 Neb. 266, 13 N. W. 282. But residence is not lost by leaving it for temporary purposes, where the intention remains to return when such purposes are accomplished.

*Daubmann v. City Council,* 39 N. J. Law, 57, 59 ; *Stratton v. Brigham,* 34 Tenn. 420, 422 ; *Warren v. Thomaston,* 43 Me. 406, 418. The general rule is that a man must have a habitation somewhere and that he can have but one, and that in order to lose one he must acquire another. *Kellogg v. Winnebago Co.* 42 Wis. 97, 107 ; *Bulkley v. Williamstown,* 3 Gray, 493, 495. Residence signifies a person's permanent home and principal establishment, to which whenever he is absent he has the intention of returning. *In re Clark's Estate,* 61 Hun, 619, 15 N. Y. Supp. 370, 371. Sec. 69, Stats. (1898), prescribes rules for determining the residence of electors. Subd. 3 of this section provides that a temporary absence from home with the intention of returning shall not deprive a party of his residence; and subd. 9 provides that intention to acquire a new residence without removal shall avail nothing, and that neither shall removal without intention. These statutory provisions would seem to be merely declaratory of the common law.

The residence of Otto Miller was with his mother, at least until he reached his majority, as he could form no valid intent to change it before. There is no proof that he acquired or attempted to acquire any new residence. There is abundant evidence that he did return to the home of his mother frequently, and at least made it his headquarters. Under these circumstances we do not think the court erred in assuming that the residence of the plaintiff was the residence of her son.

The certificate upon which suit was brought provided that no legal proceeding should be instituted to recover thereunder until ninety days after proofs of death were furnished. The constitution of the defendant required the officers of the local camp to report the death of a member to the sovereign clerk of the order, and made it the duty of such clerk to forward to the clerk of the local camp such blanks as should be prescribed by the sovereign commander and finance committee,

upon which to make proof satisfactory to them. A proper request for such blanks was made, and was refused on the ground that no notice of death had been received. In refusing to send the blanks an officer of the defendant, presumably duly authorized, stated that proof of absence could not be received as proof of death, and that the validity of the claim made could not be recognized unless actual death could be shown. The defendant, no doubt in conformity with the provisions of its constitution, had blanks upon which to make proofs of death that would be satisfactory to it. The plaintiff could hardly be expected to know what was required in this regard. There was a denial of liability if plaintiff proposed to rely on the presumption of death resulting from absence. Under these circumstances the defendant waived its right to insist on proofs of death as a condition precedent to the beginning of suit. *King v. Hekla F. Ins. Co.* 58 Wis. 508, 17 N. W. 297; *Faust v. Am. F. Ins. Co.* 91 Wis. 158, 64 N. W. 883; *Matthews v. Capital F. Ins. Co.* 115 Wis. 272, 91 N. W. 675.

*By the Court.*—Judgment affirmed.