### McGUIRE v WESTERN & SOUTHERN LIFE INSURANCE CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13035.   Decided Jan 30, 1933

Clarke & Costello, Cleveland, for plaintiff in error.

Cannon, Spieth, Taggart, Spring & Annat, Cleveland, for defendant in error.

FARR, J (7th Dist), sitting in place of McGILL, J (8th Dist).

FARR, J.

Said insurance policies were made payable to the wife. The right to recover is predicated upon the presumption of death after the expiration of seven years, which presumption is recognized in this and many other jurisdictions; **Youngs v Heffner, 36 Oh St 232; Supreme Commandry v Everding et, 20 C.C., 690.**

The record discloses that McGuire was somewhat of a skilled laborer and had worked in the city of Cleveland at different places and occupations, especially as a riveter. The record discloses that he was peculiar in that he had but few friends in the outside world. He came to Cleveland probably from New York state, where it is said that his people were respectable "New York folks", their address not being given. It is disclosed that he had only one family of close friends in the city, the Callaghans.

It is conceded that a presumption of death arises after seven years absence unaccounted for. It is further well settled that in order to recover upon such insurance policies by reason of the presumption of death, that recovery may be had only after diligent inquiry for a missing assured person. 8 R.C.L. 709; Miller v Woodmen of the World, 140 Wis. 505; 28 L.R.A. (N.S.) 178; 2 L.R.A. (N.S.) 809, and numerous other cases sustain this proposition.

It becomes readily apparent that the vital issue here is whether the record discloses such diligent inquiry as to permit a recovery in this particular case.

The record shows that soon after McGuire's disappearance, his wife began work in a factory, to support herself and five children; that she was so employed for a period of seven years; that at the time of trial, McGuire had been absent for nine years; that no one in or about the city or elsewhere so far as known, had heard from him, neither friends or family. The wife stated that, taking her children, she went to the Callaghan home to inquire for her husband, but received no information. The daughter says that she went to the Brown Hoist Company, where he had once been employed, but learned nothing; a fifteen year old son made inquiry at the county morgue and it is said in the brief of plaintiff in error that further proof was shut off by the death of Martin Hart who died some four years before trial. He was a brother in law of plaintiff, and, according to Mrs. McGuire and Mrs. Boehmer, made efforts to locate McGuire by inquiring about him at The American Shipbuilding Company and Connolly Brothers and may be other places. The administration of his estate was begun in Cuyahoga County, and an advertisement was inserted in the Daily Legal News for four weeks and again for three weeks which are exhibits attached to the record. These, however, perhaps relate exclusively to the administration of the estate and are here mentioned for the sole purpose of showing that the daughter claims to have believed that the proceedings in Probate Court was an effort to discover the whereabouts of her father. So that the situation resolves itself into this:

1. That McGuire was a peculiar man, making and having very few friends, notably the Callaghans only in the city of Cleveland.

2. Mrs. McGuire, knowing this, went to the home and made inquiry.

3. No address of his people was known to her in New York state, therefore she could not inquire there.

4. The daughter made inquiry at the Brown Hoist.

5. The son made inquiry at the county morgue.

6. Mrs. McGuire became the head of the family, shouldered the burden for seven years by working in a factory and having five children to support must have been quite limited in means financially. McGuire left his home and family on the above date and if living, has never been enough concerned to indicate his whereabouts or to furnish a penny of support; utter silence and absence for so long a period strengthens the presumption of death.

In the light of the situation of the family, even though the wife did not go to the prosecuting attorney who was then a relative, or to the police department, it is not strange or unusual that her inquiries were somewhat limited by reason of undoubted financial stress, and by reason of the utter and total indifference of her husband who had no concern for a helpless and dependent family which he left behind him. After all she did about all she could do under the circumstances of the case.

Therefore, the efforts made by the family to locate the missing husband and father, were sufficient to comply with the requirements of the law, as to "diligent inquiry." It has been well stated that each case in this behalf must depend solely upon its own facts. Therefore the missing man was peculiar, having but very few friends; his very absence and total silence would be a matter of discouragement for the wife who lacked knowledge of his people, either in New York or Ireland from whence he probably came. Consequently the conclusion is that all these matters taken together were sufficient to give rise to the presumption of death and that the further requirement as to "diligent inquiry" has been satisfactorily met.

Therefore, for the reasons given, it must be found that the judgment is against the weight of the evidence and contrary to law, and the same must be reversed and the cause remanded.

LEVINE, PJ, and LIEGHLEY, J, concur in judgment.