## PRUDENTIAL INS CO OF AMERICA v PHILLIPS

Ohio Appeals, 2nd Dist, Franklin Co

No 2526. Decided Oct 22, 1935

Carl H. Valentine, Columbus, for plaintiff in error.

James M. Hengst, Columbus, and Homer Trantham, Columbus, for defendant in error.

**OPINION**

By HORNBECK, J.

The company in its brief epitomizes the errors which it claims under five headings:

(1) The reference to the Probate Court proceedings.

(2) The evidence of death and the charge concerning death.

(3) If death be proved, its date.

(4) The fourth cause of action.

(5) The date from which the amount due, if any, should bear interest.

The questions presented by counsel have been discussed and analyzed at unusual length with remarkable particularity and exceptional ability. The mere statement of the law as contended for by counsel for the parties consumes approximately 150 pages of manuscript, with numerous citations to cases and texts. The briefs present theses on the subjects discussed and it would be entirely impractical for the court to attempt to pursue at length the line of discussion therein followed.

As before stated, the administratrix very fully set out, as preliminary to the four causes of action of her petition, the proceedings in Probate Court incident to her appointment as administratrix, the finding of the death of the insured, and the fixing of the date of his death. This action was objected to by counsel for the company at every stage of the proceedings from a motion to strike from the original petition down to and including a motion requesting the court to refuse to send the amended petition to the jury with the pleadings, after the case had been submitted to it.

It is the theory of counsel for the company that the subject matter of the proceedings in the Probate Court, including the finding of that court, was prejudicial in the extreme to the cause of the company in respect to two of the issues, namely, the death of the insured, and, if dead, the date of his death. It is the claim of counsel for the administratrix that the plaintiff conforms to recognized practice, and that in view of the unusual facts in the case it was necessary to plead and prove that which was averred as preliminary to the four causes of action, first, to establish the appointment of the administrator, and secondly, as of some weight to make proof to the company as required by the policies that Phillips was dead.

An examination of the record discloses that in the opening statement to the jury Mr. Trantham, of counsel for the administratrix, stated that she had offered, on August 23, 1932, what he believed constituted sufficient proof of the death of John W. Phillips; that at about the end of ten years after the disappearance of Mr. Phillips an action was begun in the Probate Court of Franklin County, concerning which the trial judge would instruct the jury later; further, "The laws of Ohio carry a provision whereby after a man is absent for seven years unheard of, that the persons entitled to administration of his estate may go into the Probate Court, and they may adjudge him dead, and have letters of administration issued. That action was taken along about the end of ten years after his disappearance; that certain findings were made in that case, and that letters of administration were issued to Mrs. Phillips, and that the defendant company requested of plaintiff copies of the entries and letters of administration and all of the testimony which had been offered in the Probate Court." Upon this statement counsel for the company moved to withdraw a juror and continue the case. Immediately after the first witness for the administratrix had taken the stand Mr. Valentine, on behalf of the company, admitted that the "plaintiff is acting as the administratrix of the estate of John W. Phillips, deceased."

At page 107 of the record the following discussion of counsel ensued:

"MR. HENGST: It is the same question we have had up several times, and they are questioning the sufficiency of our proof of death, so I appreciate fully that this jury would have to take this under instructions from the court; but the question of the sufficiency of our proof is in this case.

"MR. VALENTINE: I may qualify it; we are admitting that following the receipt of this letter of June 12, 1932, we were furnished with certified copies of the appointment of administrator, and with evidence to the effect that the Probate Court of Franklin County, Ohio, had found John Phillips legally dead for the purpose of appointing an administrator, and upon that finding it made an appointment. That is all I am admitting.

MR. HENGST: You admit a transcript of the evidence before the Probate Court was furnished?

MR. VALENTINE: That part is immaterial.

THE COURT: I think not. In case of loss on a policy you want proof of death. In the ordinary case you have the statement of a physician, or perhaps the undertaker, and perhaps of the coroner, if it is a violent death. In this case there is no actual proof of death possible. Now, they furnish you with what they have. I think that unless you admit that they furnished you with the transcript of the testimony in the Probate Court that I shall have to admit it.

MR. VALENTINE: Well, we except to the ruling, and we admit that we were furnished with a transcript of the testimony introduced in the Probate Court. * * *

THE COURT: As I understand in this case the main defense is that it has not been proved to the defendant that the insured is dead.

MR. VALENTINE: That is the entire question.

THE COURT: Now, the case I shall submit to this jury is for them to find out whether the insured is dead, and if he is, they shall find a verdict for the plaintiff, provided he died while the policies were in force and effect."

Thereafter, no effort whatever was made by counsel for the administratrix to offer any testimony touching the proceedings in the Probate Court, nor does it appear that it was commented upon except by the court in the general charge to the jury, though the averments in the amended petition referring to the proceedings in the Probate Court went to the jury as part of the pleadings.

Under §11339, GC, it would have been sufficient for the administratrix to have alleged the performance of all conditions precedent to the right to recover on the policies by the statement that the administratrix duly performed all the conditions on her part to be performed. **Insurance Co. v McGookey, 33 Oh St 555; Insurance Co. v Bowersox, 6 O.C.C. 1.** This short form of pleading, however, did not preclude the plaintiff from using the longer form which has been recognized as proper. The conditions precedent could properly have been pleaded, such as giving notice and making proof of loss. **Assurance Co. v Early, 23 O.C.C. (N.S.) 418.** Inasmuch as the company denied performance by the administratrix of the conditions to be performed by her under the policies of insurance, the situation respecting proof was identical without respect to the form of the petition, and it was incumbent upon the administratrix to establish proof of death to the company. In this connection it would not have been improper for the administratrix to disclose to the jury what steps had been taken which it was claimed constituted proof of death and notice thereof to the company and especially the evidence offered in the Probate Court as the company had requested a copy of it. It would have been sufficient pleading on the part of the administratrix touching her appointment to have merely averred that she was the duly appointed, qualified and acting administratrix of the estate of John W. Phillips, deceased. If she had been put on her proof the letters of administration would have established her allegation. In our judgment it was necessary that it appear not only that the company was furnished with proof of death, but also that it was notified of the appointment of the administratrix of the estate of John W. Phillips, deceased. This was not admitted until page 107 of the record.

The trial court in the general charge, said to the jury:

"You are to attach no weight whatsoever to the proceedings in the Probate Court which are pleaded in the amended petition, because those proceedings do not establish a fact, and they are only admitted and allowed to be in the pleadings to establish the jurisdiction of this court. It was necessary for Mrs. Phillips to have a proceeding in the Probate Court in order that she might be appointed the administratrix of her husband's estate; so that you are to attach no probative weight whatsoever to the proceeding in the Probate Court. I

charge you specifically that that is only a jurisdictional matter and has no probative value whatsoever in this case and you must find as to whether or not John W. Phillips is dead from the evidence which has been adduced in this case, together with the presumption of law, and from that source alone."

In view of the fact that the court in incisive and definite language, given to the jury the last thing before its retirement, expressly limited any reference to the proceedings in Probate Court to the right of plaintiff to proceed as party plaintiff in the action, we find no prejudicial error in the record because of the reference to the proceedings in the Probate Court.

The amended petition averred both the actual death of Phillips on June 27, 1922, and death by reason of seven years continuous unexplained absence. The proof of his death without the presumption incident to seven years absence is not to be found in the record but the prima facie case made by the proof of seven years continuous absence of Phillips was not, in our judgment, met by any circumstances tending to explain his absence. There is but one fact tending to explain Phillips' disappearance upon any theory, other than death, which has any weight, namely, his shortage as agent of the company.

In view of the consideration given to this question in oral argument and the space devoted to it in the briefs, we were greatly surprised to find such meager proof of shortage by the testimony of the witnesses for the company. Mr. Paullin, Superintendent for the company, at page 149, was interrogated in chief as follows:

"Q. And what did that audit (accounts of insured with the company) disclose with reference to irregularities in the handling of the Prudential's money on the part of Mr. Phillips? A. I wish I could give you separations; I have no data on it any more than as I could remember twelve years ago. I clearly remember of some deficiency. I really have forgotten how much in exactness, but a portion of it was in daily collections on the day he left. I can not recall quite what proportion that was. There was others dated back perhaps for a couple of months."

This is the sum total of the testimony of the company showing any shortage of money due it from the insured. At several places in the record in the case of the administratrix, witnesses were interrogated

respecting Phillips' arrearage, and they stated that they had been notified by the company that there was a shortage. This testimony on behalf of the company is most unsatisfactory. The record fails to disclose whether or not the insured had had any opportunity to report to the company his collections on the evening of his disappearance. It may have been that he then had in his possession much of the money, the proceeds of the day's collections with which he was charged by the company. There is no itemization of any deficiency prior to the date of his disappearance and therefore no opportunity to test it on the question of wilful misappropriation of funds. If, however, the record could be made to bear the interpretation that the insured owed the company it reasonably appears that he would have had no difficulty whatever in meeting any demand which might have been made upon him for settlement, as testified by his former employer who had offered him work as a grocery clerk at $35.00 per week, and also tendered him money to meet any obligations that might be pressing. The record lends very little support to account for the absence of the insured upon any theory other than his death.

The jury was permitted, if it found because of the presumption of unexplained absence that the insured was dead, to go further and fix the date of his death, which the jury determined was June 27, 1922, the date of his disappearance. It is the claim of counsel for the company that if the presumption of death is permitted to operate, the date of death is the termination of the seven years continued and unexplained absence. 13 O. Jur., Par. 19, p. 372, says,

"In many jurisdictions the rule is that, inasmuch as a person once shown to be alive is presumed to continue to live, one absent for the seven-year period will, where there is no evidence to the contrary, be presumed to have lived for the entire period. According to this rule at the end of the seven years the presumption arising from the absence establishes not only the fact of death, but also the time of death as of the last day of the seven years. The view generally obtaining in England, and followed by a number of courts in this country, is to the effect that, in case of the unexplained absence of a person for seven years, the law raises no presumption as to the precise time of his death; the presumption is only that the person is dead at the end of the seven years, and this seems to be the rule that prevails in Ohio; * * *."

In 17 C. J., 1174, it is said:

"There is much confusion among the cases, sometimes among those in the same jurisdiction, upon the question whether the presumption of death from seven years absence raises any presumption as to the time of the death. It was the English rule that the presumption was of death only and not of the time of death, which was to be determined by the facts and circumstances of each particular case, and the English rule is sanctioned by the weight of current authority in this country."

A very strong case supporting the theory that after presumption of death attaches because of seven years absence, the date of ·death will be presumed as of the date of the disappearance rather than the last day of the seven years absence, is Epian v Doe, 2 M. & W., 894, 913, 150 Reprint, 1021, Lord Denman, C. J.:

"When nothing is heard of a person for seven years, it is obviously a matter of complete uncertainty at what point of time in those seven years he died; of all the po.nts of time, the last day is the most improbable, and most inconsistent with the ground of presuming the fact of death. The presumption arises from the great lapse of time since the party has been heard of; because, it is considered extraordinary if he was alive, that he should not be heard of. In other words, it is presumed that his not being heard of has been occasioned by his death, which presumption arises from the considerable time that has elapsed. If you assume that he was alive on the last day but· one of the seven years, then there is nothing extraordinary in his not having been heard of on the last day; and the previous extraordinary lapse of time, during which he was not heard of; has become immaterial by reason of the assumption that he was living so lately. The presumption of the facts of death cease, therefore, to lead to the conclusion that the death took place some considerable time before the expiration of the seven years."

An exhaustive note on the subject supporting in the main the quoted text from Ohio Jurisprudence and Corpus Juris is found in American National Insurance Co. v Hicks, 75 A.L.R., 623. We believe that the trial court properly interpreted the law in its determination that it was within the province of the jury to fix the date of death of the insured.

Is there sufficient evidence under the facts in this case to support a finding that in probability the insured died as of date June 27, 1922?

The finding of certain personal effects of the insured in the Scioto River on Saturday following Tuesday of his disappearance is the only certain evidence of the subsequent whereabouts or anything which insured had on his person, it is highly improbable that the insured, if he had purposed by ruse to leave the impression that he had drowned, would have thrown an insurance policy into the river. The record disclosing that the river was dragged in the vicinity of the Mound Street bridge, but it is not improbable that the book in which the papers were found floated a considerable distance after it got into the water, so that the failure to find the body in the vicinity near which the book was found would not at all be conclusive against the theory of drowning. Because of the fact that there appears no plausible reason whatever for the continued disappearance of the insured, except death, together with the testimony which tends to prove that he died on the date of his disappearance, support is afforded for the verdict of the juiy.

Our attention is especially directed to the case of **Young v Young**, 10 Oh Ap, 351, wherein this court held that the date of death of Mr. Young who had disappeared, must under the facts be presumed to be the last day of the seven years of his absence. The distinction between the instant action and the Young case is that there was no explanation whatever which could have permitted the jury to determine the date of death of Mr. Young save and except only the presumption which attended by reason of the seven years unexplained absence.

It is urged that §10636-1, et seq., GC, effective April 13, 1923, was not properly invoked in the Probate Court and did not warrant the finding of that court, because said section was not enacted until after the date of the disappearance of the insured, and it was repealed by the new Probate Code, §§10509-25, et seq., GC, effective January 1st, 1932, fixing the presumptive date of death as of the date of the decree in Probate Court, which was prior to the final order of the Probate Court. We doubt if it is material whether or not the authority to fix date of death is found under §10636-1 GC, et seq., in view of the fact that the issues· respecting the death and date of death of the insured in the instant case were submitted to the jury under the common law only and without giving any weight whatever to the action of the Pro-

bate Court except in so far as it named the plaintiff administratrix. Without any statute the Probate Court would have had the right to name an administrator when and if it appeared that the insured was presumed to be dead by reason of seven years unexplained absence. We are in no doubt, however, that the Probate Court had jurisdiction . under §10636-1, et seq., GC, as of the date when the action was instituted, and to make the final order though the sections had then been repealed by the new Probate Code. §26, GC, in terms permitted the Probate Court to proceed to final determination of the proceeding in which jurisdiction had attached, because in any event it was a pending proceeding, and if it related to the remedy there was nothing in the repealing statutes expressly providing that they should affect pending proceedings.

The 4th ground of action is grounded upon an instrument which it is claimed was a contract of insurance issued by the company on the life of the insured. On the front page of the instrument appears the following:

"Insurance on the Lives of Field and Home Office Employees of the Prudential."

It is addressed to the Industrial Field Staff and the Home Office Force of the Company. It bears the photostatic signature of Forrest F. Dryden, President, and among other things says:

"After a careful and deliberate study of the matter we are now enabled further to recognize faithful and continued effort in behalf of the policyholders and the company on the part of those entrusted with the great work of The Prudential. It therefore gives me much pleasure to announce that the company will insure the lives of its employees, without any cost to them, whether on the active or on the retired list, for the amounts indicated in the following schedule, and that upon the death of any such employee while in the service of the company, there will be paid, in one or more installments, to the person or persons appearing to the company to be equitably entitled thereto, the sum so insured."

Then follows a schedule, the first sentence of which reads, "When the length of service of such employee has been less than one year, $500." Then follows:

"The plan announced above should not be regarded as taking the place of any personal insurance which the employees of the company may wish to carry. It does, however, render it possible for such employees to say to those whom they hold dear that the company's interests in their welfare insures, in the event of death, the payment of a sum sufficient to permit adjustment to the changed conditions.

It is with a keen sense of gratification that I extend to you my personal felicitations upon this new evidence of the ties which bind the whole Prudential organization into the most effective agency for the service of the community. which can be found in the business world today.

"Sincerely yours,
"Forrest F. Dryden,
"President."

It is dated July 17, 1916.

Many reasons are assigned in the brief of the company to establish that this is not a policy of insurance. The record is silent on behalf of the company to the effect that it was but a proposal to insure or that anything subsequent to the instrument from which we have quoted was issued to any of the employees of the company. We believe that it is a contract of insurance covering a group, viz., those who could qualify as employees of the company in the industrial field, staff or home office force other than officers or directors of the company. Some helpful testimony definitive of the significance of the instrument is found at page 155 of the record of the examination in chief of Arthur Kemmerly, retired superintendent of the company, who at the time of the disappearance of the insured, was acting in that capacity with the company. We set out a few questions and answers:

After saying that the exhibit is a circular to the field force of the company Mr. Valentine inquired: "Yes; now I am asking for further evidence as to what the plan is. It is not shown in this pamphlet.
THE COURT: Let him answer.
THE WITNESS: It is insurance given free to the employees as a matter of gratuity for their service."

The question immediately following. and answer thereto shed some light on our query:
"Now, Mr. Kemmerly, directing your. attention to the case of John W. Phillips, do you know what was done by the company with reference to this so-called field insurance of his at the time of his disappearance, or of his leaving the company's

service? A. It was cancelled. It is only in effect while the employee is in active service or on retirement or total disability."

That is a recognition by the witness that the contract of insurance had been during the lifetime of Phillips in effect, because it sets forth the cancellation of the contract. Without the existence of the policy there could of course be no cancellation.

But it is urged that the administratrix should not be permitted to recover because the insured at the time of his death was not, as provided by the policy, in the employ of the company, and further that the company was required to pay only to the person or persons appearing to the company to be equitably entitled thereto. The jury having determined that the insured died on June 27, 1922, it follows that he was at that time in the service of the company. We attach no significance whatever to the claim that the policy should not be paid because of the right of the company to determine who was equitably entitled thereto. This position is inconsistent with the denial of any liability on the policy. Then too, the right of the company to insist upon the provision under consideration would require it to exercise its privilege with discretion. The time has long since passed when money due under this policy could be paid to those who had rendered immediate service in connection with the disappearance of the insured. As the money is payable to the estate, it follows that it will be used to meet the obligations of the insured and if any be left, the widow will be the beneficiary. In view of the relation of the widow to the insured and there being no children it would seem that the company could not be heard to say that she was not equitably entitled to the proceeds of the policy after the payment of the insured's debts.

There was one other and further question made upon the record, namely, the right of the administratrix to recover interest on the policies of insurance from June 27, 1922. Three of the policies provide, in substance, that immediately upon receipt of due proof of the death of the insured during the continuance of this policy, the company will pay at its home office the amount of the insurance herein specified, to the executors or administrators of the insured. As we have heretofore stated, we are of opinion that the policy set up in the fourth cause of action is also payable to the administratrix. The administratrix was appointed on the 23rd day of August, 1932. The administratrix was not in the status

to recover until after her appointment because there was no one under the terms of the policies to whom payment could be made; nor was it possible to make proof of death of the insured until after his seven years unexplained absence. The company was cognizant of the situation respecting the disappearance of the insured, but not until answer to the letter of the company of date July 12, 1932, were the necessary facts disclosed which created the obligation of the company to pay the amount due on the policies. It appears in the testimony that the information requested by the company was provided, but the exact date does not appear. No doubt it is available to the parties. This should be the date from which interest should be computed. If it is not determined, then let interest be computed as of date July 20, 1932, as that must in all events be the approximate date of the time when the company had all proper proof.

The judgment of the trial court should therefore be affirmed in all particulars save the allowance of interest on the policies from the date of disappearance of the insured, namely, June 27, 1922, which properly should be as above recited. If the plaintiff in error will enter a remittitur of so much of the judgment as is represented by the interest to which under our decision she is not entitled, the judgment will be affirmed; otherwise it will be reversed and remanded for a new trial.

BARNES, PJ, and BODEY, J, concur.