## DOTY v OHIO NATIONAL LIFE INS CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2791.   Decided Dec 10, 1937

Arnold, Wright, Purpus & Harlor, Columbus, and Earl F. Morris, Columbus, for appellant.

John F. Seidel, Columbus, for appellee.

## OPINION

By GEIGER, J.

This case is in this court upon appeal on questions of law.

In the lower court the plaintiff was awarded judgment in the sum of $9,398.00, in an action based upon two insurance policies, each in the sum of $5,000.00, dated December 5, 1924, on the life of H. Olaf Mathiasen, the former husband of the plaintiff.

The amended petition alleges the issuance of the two policies by the defendant, the amount thereof to be paid to Clara D. Mathiasen, upon the receipt at the Home Office of the company of "due proof of death" of the insured, during the continuance of the policies.

It is alleged by the plaintiff that all the conditions of the policies upon the part of the insured and of the plaintiff had been performed, and that on the 2nd day of January, 1936, the plaintiff duly notified the defendant of the death of the said Olaf Mathiasen, and made proof thereof in writing, and demanded payment of the amount of the policies, and that on the 3rd day of January, 1936, defendant refused to pay.

It is alleged in the petition that on or about the 15th day of November, 1928, the insured "disappeared from his home and usual place of residence, and that ever since said date and day he has neither been heard of, seen, or his existence or whereabouts established. That the said H. Olaf Mathiasen is dead."

The defendant admits the issuance of the policies and the provisions that it would pay the sum of $5,000.00 on each, to the wife of the insured as beneficiary, upon receipt at its Home Office in Cincinnati "of due proof of the death of the insured",

while the policies were in force and subject to conditions in said policies.

Defendant admits that a claim has been made by the plaintiff herein for the proceeds of said policies and that the defendant has refused to pay the same, and denies each and every allegation not specifically admitted to be true.

After the introduction of all the evidence the defendant moved for an instructed verdict, which motion was overruled. The case being submitted, the jury brought in the verdict as above indicated. Motions for new trials were made, overruled, and judgment entered.

### ASSIGNMENT OF ERRORS

The defendant-appellant assigns as errors that the court erred in overruling its motions to instruct the jury to return a verdict in its favor; that the court erred in admitting evidence over the objection of the defendant and in overruling defendant's objection to certain portions of the argument of counsel for plaintiff and that the court erred in overruling defendant's motion for new trial.

The matters drawn to the attention of this court are:

(1) Under the evidence presented was the defendant entitled to an instructed verdict?

(2) Does the evidence support the verdict as rendered?

(3) Did the plaintiff comply with the provisions of the policies in submitting "due proof of the death of H. Olaf Mathiesen," during the continuance of the policies?

It is admitted by the defendant that the policies are in full force, insuring the life of H. Olaf Mathiesen, for the benefit of Clara Mathiesen (Doty).

### EVIDENCE OF DEATH OF INSURED.

The insured was born in Norway, in 1882, and at an early age came to this country with his parents and other members of his family, arriving in Columbus in 1907, where he secured employment as a carpenter-contractor. In that year he married plaintiff.

During the early part of his married life he lived in harmony with his wife, but later on began drinking and apparently gambling, so that there was some family discord beginning to make itself felt in 1923.

The insured was of fine physical stature, and in perfect health up until March 12 1925, when in the course of his employment as a contractor he fell off a scaf-folding, the end of his spine coming in violent contact with a stone. The injury was severe enough to cause him to become unconscious and as a result of his fall he was confined to his home for six weeks or more.

After this injury the evidence indicates that he suffered physical deterioration. and that his bowels were so paralyzed as to make it necessary to use artificial means to produce a movement. This was accomplished by the use of enemas and Epsom salts. From that time his health began to decline rapidly. and he became an addict to the use of salts, and showed many evidences of further physical deterioration, and was unable to do the work formerly accomplished by him. A pronounced change in his appearance was an apparent rapid ageing, producing the appearance of a man much older in years than he actually was. Within the period of two years his appearance was so changed that his old acquaintances who had not seen him for sometime found difficulty in recognizing him.

His wife and other witnesses testified at length as to his physical condition. Expert testimony of physicians was received over the objection of defendant.

He left home in August, 1926. His wife immediately began to make search for him. She communicated with Mr. Mulholland, an agent of the company asking him to help locate her husband.

She continued this search until she at last ascertained that he had been arrested for obtaining money under false pretenses, and that he was then confined in jail.

She afterwards, on the 14th day of July, 1927, began an action for divorce and alimony, securing a decree in due time. About a year later she filed a motion for citation in contempt, requiring her husband to appear on the 10th day of July, 1928, to show cause why he should not be punished for failure to pay the alimony ordered by the court.

On October 21, 1927, an indictment was returned against him for obtaining money by false pretenses, in that he had falsely pretended, with intent to defraud, that all bills incurred in the construction of a building had been paid, whereas they had not been so paid.

He afterwards plead guilty, and on December 1, 1927, the court made an order suspending imposition of sentence for a period of time necessary to make restitution of $1,100.00, the amount he had secured through the false pretenses and

that he be placed in charge of the Probation Officer.

The last time he reported to the Probation Officer was on November 2, 1928, and on January 2, 1929, the Probation Officer received information that he was loafing around a restaurant on Third Street, and upon going to this restaurant was informed by the proprietor that H. Olaf Mathiesen had just gone out the back door. That is the last time that any one testified to have seen him in Columbus, and he has never been heard of since.

His wife made search for him, inquiring of those who knew him in Columbus, and consulted the police officers, probation officer, and other sources from which she hoped to get information, writing to his relatives both in this country and in Norway, and going to Brooklyn to seek information from a brother who resided there and wrote to a Norwegian Seaman's Hotel in New York, without result.

In May, 1930, she wrote to the defendant Insurance Company. In July, 1930, a Mr. McCarthy, representing himself as a field man for the Insurance Company, called upon her, making extensive inquiries as to her knowledge of her former husband's habits, asking her

"a lot of questions about my husband, his physical condition, if I had heard anything of him. He asked me if I knew his relatives, asked me the names of relatives, asked me some questions that I could not answer, because I did not know the answers."

These questions she answered as she could, and the agent made a written statement which she signed.

During her testimony in reference to this statement, the Insurance Company produced what purported to be a copy, and the plaintiff upon reading admitted that a number of statements were correctly reported, but claimed that a number were incorrectly reported, and she refused to say that it was an exact copy of what she said.

The copy of the statement was then marked "Plaintiff's Exhibit F." Neither it nor the letter she testified she had written to the company on May 8, 1930, nor the reply of the company on May 10, 1930, which resulted in the call of the presumed agent, appear in the record. She received a reply to a letter written to a brother of the insured, in Norway, but it disclosed no information.

She went to Brooklyn, in October, 1936; contacted a brother of the insured, but acquired no information from him.

She testified that when in Brooklyn she found that men representing themselves as field agents of the company had been there several times, but the court properly excluded this testimony.

On cross-examination the plaintiff was extensively interrogated as to statements appearing in the copy identified as "Plaintiff's Exhibit 2." Although the correspondence with the company and the statement made as the result thereof does not appear in the record, it is clear that it had reference to the disappearance of the insured, and the company had as early as 1930 full knowledge of the fact that he had disappeared, and that the plaintiff was searching for him, and that she solicited the aid of the company in her search, and gave to the company all the information that she had as to the names of the relatives, both in this country and in Norway. (Rec. 93-94).

Again, in October, 1934, she was visited by one representing himself as an agent of the company, with whom she had a conference about the whereabouts of the insured, but informed the agent that she could not add anything to her former statement.

The plaintiff was cross-examined as to contradictory statement she made in her petition for divorce, and in her application for citation for contempt, chiefly as to the health of the insured. Her statements in the divorce and contempt actions were to the effect that he was in good health and able to earn sufficient money to support her, and also that his drinking and gambling continued during their entire married life.

The Probation Officer appeared as a witness for the defendant, and testified as to the movements of the defendant after he came under his control, and that he did not appear to be in poor health.

Upon this state of evidence, the defendant moved for an instructed verdict, and in support of that motion urging that the evidence was not sufficient to justify the conclusion that the man was dead merely from his seven years continual absence.

The defendant urges that he had many reasons for leaving his home, among them being his unhappy married life prior to his divorce, his subsequent divorce, and arrest for obtaining money under false pretenses, and his being in the custody of the Probation Officer.

LAW AS TO ABSENCE

An early Ohio case states:

"As to the second error assigned we would merely remark that the evidence shows that Bounds had not been heard from for more than seven years before the commencement of the suit, and might be presumed to be dead, and his heirs entitled to bring the suit for the land." **Stover v Bounds, 1 Oh St 107 at 110.**

"When a man leaves his home or usual place of residence and goes to parts unknown and is not heard of or known to be living for a period of seven years, the legal presumption arises that he is dead." **Rice v Lumley, 10 Oh St 596.**

"If a husband leaves his family and usual place of residence, and goes to parts unknown, or a distant state, and is not heard from for a period of seven years, a presumption arises that he is dead." **Rosenthal v Mayhugh, 33 Oh St 155.**

See also:

**Young v Young, 29 O.C.A. 524.** (Franklin County).

**Prudential Insurance Co. v Phillips, 20 Abs 228** (Franklin County).

**Life Ins. Co. v Smith, 31 Oh Ap 216,** (Franklin County).

**Supreme Commandery v Everding, 20 O. C.C. 689.**

"The legal presumption of death which arises from the absence of one from his home for the period of seven years, and who in the meantime is not heard of, is but prima facie evidence of the fact, and may be rebutted by counter-proof." **Nichols v Clare, 32 O.C.A. 555.**

Secs 10509-25, GC, et seq., set out the proceedings in Probate Court to establish the presumption of death arising from seven years absence. While these statutes do not control in this case, they indicate the caution that should be exercised, before actual death be judicially determined.

Other authorities have been cited in counsel's brief which we have examined.

The court in charging the jury was very careful to state and re-state that absence for seven years was only prima facie evidence of death.

"But as I say, the mere absence does not prove death. Neither does the absence unexplained and otherwise undetermined prove death. But it is a question of fact

for the jury under all the circumstances to determine what is the ultimate fact. The law, as has been decided in this state, is to the effect that the rule that an absentee who has not been heard of for seven years is presumed to be dead is subject to limitations, and circumstances may be such that no presumption of death will arise. Where the failure of the absentee to communicate with friends is satisfactorily accounted for on some other hypothesis than death, the presumption of death resulting from his absence, unheard of for seven years does not arise."

The court repeated this in substance a number of times and epitomized his charge by a statement by the United States Supreme Court:

"A person who for seven years has not been heard of by those who, had he been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not having been heard of without assuming his death."

We do not think it necessary to cite further cases, but so far as the motion for a directed verdict as well as a motion to set aside the verdict, we can summarize the evidence as tending to show that a man formerly in good health and happily married suffered an accident which caused a marked change in his physical well-being, and caused him to acquire a habit which further impaired his health, and that after suffering reverses and falling into bad habits he finally disappeared, in such physical condition that doctors, testifying as experts, gave no hope that he would long survive.

Diligent search was made for him by his wife, both prior to the time of his last appearance, in Columbus and elsewhere continuously until 1936, by such means as she had at hand and could afford, even to the extent of going to Brooklyn to consult his relatives.

In the meantime she had kept the insurance company advised, and solicited its aid in the search, consulting with the agents of the company as late as 1934.

The evidence is such that the jury could well assume that the insurance company was also making diligent search for the missing man, in that they were early advised of his disappearance, and given all the available information, and consulted with the plaintiff to obtain further information.

As against this evidence of the plaintiff there appears but little evidence given by the defendant, the argument against the verdict being to the effect that there were other reasons than death which would account for his absence, as heretofore pointed out.

As to the motion to direct a verdict, we are of the opinion that the court was correct in overruling same. As to the motion for a new trial on the weight of the evidence, we are of the opinion that the court did not err in overruling the same. The evidence was such that the case was unquestionably one for the jury.

## OTHER ERRORS CLAIMED

It is claimed by the defendant that the court erred in permitting doctors to testify as experts, basing their opinion upon hypothetical questions as to the condition of health and probable death of one in the physical condition of the insured as disclosed by the evidence touching this matter.

Another objection urged is that counsel during argument made certain statements set up in the bill of exceptions that were improper, in that they were not supported by the evidence, objections to which were overruled.

Some of the statements were probably objectionable, but any claimed error was cured by the positive injunction of the court appearing in his charge as follows:

"You find no facts from the pleadings or statements of counsel; and anything which counsel may have said about the facts, either during their preliminary statements, during the trial of the case or during the argument, is to have no weight whatsoever with you unless such statement accords with the facts as you find them from the evidence, which has been admitted during the trial of the case."

Counsel, of course, should be careful in addressing the jury, that they make no objectionable statements, and the court likewise should be careful to caution the jury in reference to such statements.

We think the court acted in this case so that any prejudice that might have been aroused by the statement of the counsel was guarded against.

## HAS THERE BEEN DUE PROOF OF DEATH?

Counsel for defendant are very insistent that the plaintiff has made no proof of death so as to entitle her to bring the action. This is a very important question, and it is to be regretted that counsel for plaintiff, during the trial, was not more careful in exhibiting proof of death, so as not to leave such a basic matter open to question.

It will be observed in these policies there is no other requirement upon which the payment is to be based, than included in the first paragraph of the policies:

"Upon receipt at its home office in the city of Cincinnati, Ohio, of due proof of the death of H. Olaf Mathiesen, herein called the insured, during the continuance of this policy of insurance, subject, however, to the conditions and privileges hereinafter set forth."

This is a very liberal provision as to proof of death, many policies requiring much more formal proof, either as to what shall constitute such proof, or how and when it shall be made. In fire and accident insurance policies the requirement as to proof is even more rigid than in life insurance policies. As an example of requirements, we point to that in the case of **Insurance Co. v Smith, 31 Oh Ap 217,** wherein at page 218, Judge Kunkle points out the requirement of one of the policies, there being two:

"After receipt at said office of satisfactory proof of the death of the insured, made in the manner, to the extent and upon blanks furnished by the company, together with a full statement of the nature or character of the claimant's interest and demand the second policy provides upon receipt for payment by the company of due proof of the death of Victor P. Smith."

We may first observe that the "due proof" need not be made at any particular time, except that it should be after the claimed death of the decedent and before the payment of the money. This due proof is, of course, such proof as under the conditions of the death, is available.

In case of due proof in ordinary death, the standard requirements are the statement of the attending physician, the identification statement, and the undertaker's statement.

It was said by the court in his charge to the jury:

"Now as you have already been advised, and as your own sense would tell you, in an action of this kind there can be no

direct proof of death. Ordinarily under an insurance policy they have the certificate of the attending physician and the certificate of the undertaker,—the funeral director, as we call them nowadays,—and proof of death, the certificate of the coroner, evidence of people who actually knew that the person had died, in this case the proof of death is not susceptible of that kind of proof."

This statement of the court is manifestly correct, and the due proof required by the policy need only be such proof as could be furnished under the circumstances. The proof submitted to the jury in the trial of the case need not all be submitted on the preliminary proof of death.

The absence of the insured for the period of seven years is presumptive evidence of death and if due proof of this is submitted to the company and not questioned, it is sufficient to be the basis of a demand for payment under the policy.

## WAS PROOF WAIVED?

The petition alleges that,

"On the 2nd day of January, 1936, the plaintiff duly notified the defendant of the death and made proof thereof in writing and demanded payment of the amount due on the policy, and that on the 3rd day of January, 1936, the defendant refused to pay said sum or any part thereof."

The answer admits that a claim was made by the plaintiff for the proceeds of the policy, and that the defendant has refused to pay the same.

There was some colloquy between counsel and with the court during the trial as to just what was admitted by the defendant, touching the "proof" made. (Rec. 52-117-118).

There can be no doubt that the company had full information as to the claimed disappearance of the insured for the period under such circumstances as would raise the presumption of his death.

We are not embarrassed by the uncertainty that often surrounds unauthorized statements made by the agent of a company.

As far as the claim and proof of death are concerned, they were held directly with the company without intervention of an agent, so far as we are informed. The company simply refused to pay the claim. It did not inform the plaintiff that the refusal was based upon a lack of preliminary proof for a failure of the claimant to file a formal sworn statement upon

blanks furnished by the company. If the company relies upon failure of proof of death, it must do something more than simply to reject and refuse to pay the claim.

It is well established that if an insurance company makes known the fact that it will not pay the claim, for certain stated reasons, not related to the proof of loss, it thereby waives the proof of loss. The claimant should not be required to do that which would be futile, unless the failure of proof is the basis of the refusal.

"Objections to the preliminary proofs as to loss will be considered waived, if not made when the proofs are presented, and the insured is informed by the underwriter that the claim is rejected entirely on other grounds."

The court states on page 131:

"The point made on the defective preliminary proofs can not avail; for, no objection being made when they were presented, and the claim being rejected on other grounds, it must be regarded as waived. If it had been made at the time they were presented, the defects could then have been easily amended." **Ins. Co. v Boyle, 21 Oh St 119.**

"It is objected that this finding is against the evidence. We do not think so. The requirement of preliminary proofs of loss is a formal condition, inserted in the policy solely for the benefit of the insurer. That such proofs may be waived in whole or in part, is well settled as a legal proposition. The waiver may be by the direct action of the insurer, or by his general agent, by virtue of his authority."

"Objection to the preliminary proofs as to loss will be considered waived if not made when the proofs are presented, and the insured is informed by the underwriter that the claim is rejected entirely on other grounds." **Insurance Co. v Parisot, 35 Oh St 35, pp. 40-41 and cases cited.**

See: **Ins. Co. v Harmer, 2 Oh St 452,** last paragraph of syllabus and p. 476-477, and cases cited.

**Protective Association v Smith, 12 Abs 132.**

22 **O. Jur., §643:**

"WAIVER BY DENIAL OF LIABILITY. The Ohio courts seem to be fully in accord with the general rule that a denial by the insurer or its authorized agent of liability under its policy, if made during the period

for presentation of proofs, will operate as a waiver of a provision which is merely a condition precedent to the bringing of an action, such as one requiring notice and proofs of loss; at least, where the denial is based upon grounds other than the failure to furnish such notice or proof; also of any delay as to furnishing or defect in such notice or proofs. And defects in preliminary proofs of loss are waived by rejection of the claim on entirely different grounds, especially where no objection is made to the alleged defects."

Wilson v Insurance Co., 6 Ohio Dec. 481.

Insurance Company v French, 30 Oh St 240.

Insurance Co. v Strechle, 13 Ohio Dec. Reprint, 846, 3rd Syl. (Cincinnati Superior Court, Judge Yaple).

We are of the opinion the defendant cannot, after rejecting the claim with no reference to inadequacy of proof of death, and proceedings to trial, assert as a defense that there was no adequate proof.

We do not feel that the case of Connor v Life Ins. Co., 166 N. Y. S. 985, relied upon by defendant, militates against this position.

Judgment affirmed.

BARNES, PJ, and HORNBECK, J, concur.