MOKNACH, APPELLEE, v. NEW YORK LIFE INS. CO., APPELLANT.

(Decided April 18, 1941.)

*Messrs. Henderson, Ranz & Henderson* and *Messrs. Friedman & Rummell,* for appellee.

*Messrs. Hammond, Hoyt & Rand,* for appellant.

PHILLIPS, J. Plaintiff, the divorced wife of Alex Sera, Jr., was the named beneficiary in a policy of insurance issued by defendant, a New York life insurance corporation, upon his life. The policy being in full force and effect under an extended insurance contract, plaintiff brought an action in the lower court to recover the proceeds of that policy based upon the presumption that the insured was dead, inasmuch as he had not been heard from for more than seven years. The lower court entered judgment on the jury's verdict for the plaintiff, and it is from that judgment that defendant appeals to this court on questions of law.

Plaintiff alleged that the insured disappeared on April 5, 1930; that proof of his death had been furnished to the defendant; and that diligent search had been made for him, but he had not been found.

Trial by jury was waived by the parties in open court at a duly assigned pre-trial hearing of the case, held in accordance with the rules of the lower court, but plaintiff's subsequent motion to submit the case to a jury was sustained "for the reason that to deny the plaintiff the right of trial by jury might prevent her from having the full benefit of every legal right which she might have in the trial of the case."

This motion presented a matter addressed to the sound discretion of the lower court, with which discretion this court will not interfere in the absence of a showing of an abuse thereof. We do not find such an abuse to exist.

Briefly the evidence disclosed that plaintiff and the insured were married in 1926; that four months subsequent thereto their first child was born, who later died; that a second child was born to them, who died at the age of eight years; that both children, while alive, lived with their paternal grandparents; that against insured's wishes plaintiff was employed during

their entire marital life, because, as she testified, "he couldn't give me comfort, because he wasn't making enough," it appearing, however, that he gave her all his earnings; that their married life together was happy, and "he had no reason to leave home," although there is evidence that insured had said "he didn't like to come home to a cold stove and leave a cold stove," referring presumably to the fact that his meals were not timely; that at least upon one occasion he expressed discontent with married life, and on another told a friend to "never get married"; that sometime he was going away, "nobody will know where or when," and nobody would ever hear from him again; that he had made inquiry concerning different parts of the country and South America and the rubber plantations there, and expressed a desire to join the marines, to travel, and talked of buying a boat to run "on the Ohio River and run it down into the Gulf of Mexico"; that on the fifth day of April 1930, insured, who was twenty-seven years old, in good health, with a life expectancy of 37.43 years, and who was employed, left home, without notice to plaintiff, or other persons having a claim on his affection, and no word concerning him has since come to any person; that plaintiff did not immediately report his disappearance to the police department or any other person because she thought he was at his mother's home, where they occasionally went to spend week-ends and visit their child, but on April 9, 1930, she did report his disappearance to the police department, and communicated with, and furnished such requested and required information to defendant, as she could concerning him; and that on July 1, 1930, plaintiff filed an action for divorce, which was granted on October 24, 1930, and within three months after insured's disappearance and prior to obtaining her divorce plaintiff went out with another man and subsequently in 1931 married a third man. The evidence further discloses

that in response to a question concerning what she did to find him she responded "everything I possibly thought of myself." This undisputed answer is all inclusive, unlimited in time and upon which, unfortunately perhaps for defendant, she was not further interrogated. Had she been questioned further, a different situation might have been presented to this court. As far as the record discloses the jury improbably but possibly and conceivably could and may have interpreted her answer to mean daily and constant efforts to find him.

Here is a conflict of testimony that presented an issue for the determination of the jury as to whether insured's absence was accounted for or explained, and whether plaintiff made such a diligent search for insured as suggested by the circumstances and as to fulfill the requirements of the law and the required degree of diligence.

"The rule that an absentee who has not been heard of for seven years is presumed to be dead is subject to limitations, and circumstances may be such that no presumption of death will arise. Where the failure of an absentee to communicate with his friends is satisfactorily accounted for on some other hypothesis than that of death, the presumption of death resulting from his absence, unheard of for seven years, does not arise." *Curry, Trustee, v. Pierrot,* 12 Ohio App., 506.

"It is further well settled that in order to recover upon such insurance policies by reason of the presumption of death, that recovery may be had only after diligent inquiry for a missing assured person. 8 Ruling Case Law, 709, Section 6; *Miller* v. *Woodmen of the World,* 140 Wis., 505, 122 N. W., 1126, 28 L. R. A. (N. S.), 178, 2 L. R. A. (N. S.), 809." *McGuire* v. *Western & Southern Life Ins. Co.,* 13 Ohio Law Abs., 596, at 597.

See, also, authorities cited in *Doty* v. *Ohio National Life Ins. Co.,* 58 Ohio App., 1, 15 N. E. (2d), 544.

We cannot say that a verdict of a jury founded upon such evidence is not sustained by sufficient or any evidence, is against the manifest weight thereof, or was rendered under the influence of passion or prejudice.

It is believed then that the lower court did not err prejudicially to defendant in overruling its motion for a verdict directed in its favor made at the close of plaintiff's case and again at the conclusion of all the evidence.

We have reviewed the brief record submitted to us and find no error in the admission of incompetent evidence offered by the plaintiff in the respects charged, which evidence consisted of a group picture of plaintiff, the insured and their minor child, and which defendant claims prejudiced the jury against it. We do not so find.

We come now to consider defendant's claim that the lower court erred in refusing to permit its counsel to read to the jury the statute proffered as evidence, providing that nonsupport of insured's minor child was an offense that subjected him to a fine and imprisonment. It is claimed this would tend to show a reason why he remained away from home. This request we believe was properly refused for the reason that there is no evidence that insured was or would be indicted on this charge, and hence no reason why he should remain away from home on that account.

It is apparent that the cited case of *Gayton* v. *Equitable Life Ins. Co.*, 245 Ill. App., 432, in which it was held in paragraph five of the syllabus that "in an action on a policy on one alleged dead after long absence, it was error for the court to refuse admission in evidence of a court record showing insured had committed forgery shortly before his disappearance," is distinguishable from the case at bar.

The trial judge refused to submit to the jury defendant's special request to charge before argument which reads:

"The court says to you as a matter of law that Alexander Sera was by law charged with the care, support and maintenance of his minor child, and if he was able to support or contribute toward her support and failed, neglected or refused to do so, or abandoned such child, he was subject to a fine of not more than $500 or imprisonment for not more than one year or both, and that each day of such failure, neglect, or refusal constituted a separate offense, and that had he been found in another state or territory he could have been brought back to Ohio and punished as I have before stated to you."

Obviously this request was properly refused for the reason hereinbefore assigned.

Defendant requested the trial judge to submit to the jury a special interrogatory reading:

"Were there any facts or circumstances which made it improbable that Alexander Sera would not have communicated with his friends or family here even if he were still alive?"

The trial judge refused to submit this interrogatory to the jury "for the reason that I am of the opinion that the language is a little bit difficult to understand and it might be answered by the jury in a manner that would indicate they didn't understand it as they should understand it when they would give an answer thereto."

This is sufficient reason why the interrogatory should not have been submitted, and it is believed that the lower court did not err prejudicially to defendant's rights in refusing to submit it to the jury.

Plaintiff's counsel in closing argument to the jury, argued upon facts, not only not supported by the record but in direct conflict therewith, which are not necessary to recite in order to discuss the question presented of claimed misconduct of counsel.

While we can not and do not sanction or condone such conduct, which ought not and must not go un-

noticed, yet we have concluded that we would not be warranted in reversing the judgment of the lower court on that ground, since the offense committed concerned facts, which the members of the jury heard and with which they were familiar, and concerning which they probably could not be misled, and not a proposition of law, which they should take from the court and by which they could possibly have been misled.

The record of the proceedings in the lower court fails to disclose to us any misconduct of the trial judge or counsel, except as herein noted, or any misconduct of litigants or witnesses in open court, or other irregularities in the proceedings as urged, though not argued by the defendant.

Finally we come to discuss defendant's remaining assignment of error that the trial judge erred in his general charge to the jury. Counsel for defendant failed to direct our attention to specific claimed instances of such error, either in their oral argument, original or reply brief. We accordingly do not pass upon the charge of the court to the jury.

It follows that the lower court did not err in overruling defendant's motion for a new trial, and that its judgment is not contrary to law. Having disposed of each of defendant's eighteen claimed grounds of error, we affirm the judgment of the lower court.

*Judgment affirmed.*

CARTER, P. J., and NICHOLS, J., concur.